John C. LUCCOUS, Sr. and John C. Luccous, Jr., Appellants,

v.

J. C. KINLEY CO., Appellee.

No. 5616.

Court of Civil Appeals of Texas.

El Paso.

May 22, 1963.

Rehearing Denied June 19, 1963.

Lynch & Chappell, Vann Culp, Midland, for appellants.

Stubbeman, McRae, Sealy & Laughlin, W. B. Browder, Jr., Charles Tighe, Midland, for appellee.

FRASER, Justice.

This is an appeal from a temporary injunction order entered by a district judge. The temporary injunction enjoined appellant herein from using, renting or leasing any sand-line cutter tools secured from appellee, or tools copied or made substantially in accordance with such tools. The tools in question are sometimes referred to as sand-line cutters, wire-line-cutters, cutters, cutting guns and cutting tools.

The petition containing the prayer for the temporary injunction was filed by appellee, J. C. Kinley, an individual doing business as J. C. Kinley Co., against Luccous Service & Equipment Co., a Texas corporation; John C. Luccous, Senior; John C. Luccous, Junior; and J. D. Whiteside. John C. Luccous, Senior and John C. Luccous, Junior, are appellants in this court.

Some years after a patent had been issued covering the tools in question, Luccous Service & Equipment Co. entered into a written contract with M. M. Kinley, the inventor, wherein Kinley granted a license to use his patented wire-line-cutters and patented lift device. Certain wire-line-cutting and other tools were secured by Luccous Service & Equipment Co. from M. M. Kinley Company under and by virtue of the said licensing contract. Later on, the patents expired; but subsequently a patent was issued on the lifting device. January 1960, some four years after the initiation of the licensing agreement, M. M. Kinley Company was sold to appellee, J. C. Kinley. In April of 1961 John C. Luccous, Senior sold the stock in Luccous Service & Equipment Co. to J. D. Whiteside, who became and is now the owner and president of Luccous Service & Equipment Co. Appellee maintains that after the sale of the company to Mr. Whiteside, John C. Luccous, Senior, commenced making sand line cutting tools that were as exact copies of the Kinley tools as possible, and that he admitted that he got his information from looking at and dealing with the Kinley tool.

Appellants maintain that the injunction was wrongfully issued, and present seven points of error for our consideration. We shall deal with appellants' first point with some particularity, as it is divided into four sections and involves what we believe to be some of the decisive matters of this lawsuit.

Appellants claim that appellee has no property rights in the copied tools because appellee cannot show or establish a situation of unfair competition or violation of trade secrecy. Further, appellants claim there is no evidence of any confidential relationship having ever existed between appellants and appellee, and no unfair competition or patent infringement is involved.

We believe the law has been fairly well enunciated with respect to this matter, the various cases holding that one who has a secret formula, process or device has a property right therein which will be protected against those who attempt to apply the secret to their own use through breach or violation of a confidence or confidential relationship. Brown v. Fowler, Tex.Civ. App., 316 S.W.2d 111 (N.R.E.) A Federal court has held that while others may legitimately copy or imitate a trade secret, such may not be done by one who obtained the knowledge by virtue of a confidential relationship. Sandlin v. Johnson, 8 Cir., 141 F. 2d 660. The Supreme Court of this state has said that "Injunctive relief is not based upon the patent but the circumstance that the petitioner gained knowledge of such device (the invention) at a time prior to its being patented through an abuse of a confidential relationship." This decision goes on to say that it considers the better rule to be that which permits the injunction to extend beyond the term of the patent. Hyde Corporation v. Huffines, 158 Tex. 566, 314 S.W.2d 763 (Tex.S.Ct.). This case and others came about because many litigants urged that once a device was patented its secret construction, working or processes necessarily became public property. We think a case in point is K & G Oil Tool &

Service Co. v G & G Fishing Tool Service, 314 S.W.2d 782 (Tex.S.Ct.). Our Supreme Court in this case upheld an injunction restraining defendant from wrongfully copying, making and using a fishing tool devised by plaintiff (by fishing tool, of course, is meant a tool used in the oil industry). The court said:

> " * * * The K & G tool was successful and hence the owners of the device and manufacturing processes should be protected * * * against those who * * * are attempting to deprive them of such advantages by a breach of confidence and a failure to abide by their contractual obligation."

We think the clear intent of these cases is to protect the inventor or owner of a secret process or device from competition by one who obtained the secrets through a confidential relationship, and we think the courts have made it clear that while the public may copy the device or formula, such privilege is properly denied to one who obtained the information through a confidential relationship. Also, we believe that the courts have definitely established that one may have a protectible property right in a device or tool similar to the one with which we are here concerned.

 We believe that the very nature of the licensing agreement or contract, entered into between the original parties, established such a confidential type of relationship as is contemplated by the above-cited cases and others that speak on this matter. There were two patents originally issued, and then a later patent was issued on the lifting device. On the basis of the evidence before the trial court, we think he was justified in holding that there was a trade secret involved here, and that it came into the possession of appellants by virtue of a confidential relationship. This being true, the copying of the tool and use of same would constitute, we believe, unfair competition. Other cases have spoken on the matter, especially where the subject of a patent has been brought up. In Welex Jet Service, Inc. v. Owen, 325 S.W.2d 856 (Fort Worth Tex.Civ.App.) the court, in sustaining an injunction, stated that the matter of a patent was not such a public disclosure as would destroy the secret nature of the process, nor was there any restraint of trade involved, but rather the matter constituted a violation of a fiduciary relationship to the detriment of the inventor. The Federal court, in Franke v. Wiltschek, 2 Cir., 209 F.2d 493, said:

> "It matters not that defendants could have gained their knowledge from a study of the expired patent and plaintiffs' publicly marketed product. *The fact is that they did not*. Instead they gained it from plaintiffs via their confidential relationship, and in so doing incurred a duty not to use it to plaintiffs' detriment. This duty they have breached." (Emphasis ours).

These cases cited above, we believe, further articulate the law with reference to this subject and, as the Colorado court stated in Julius Hyman & Co. v. Velsicol Corp., 123 Colo. 563, 233 P.2d 977:

> "They (appellants) now seek to appropriate these trade secrets to their own use and profit by a violation of their contractual agreements and a betrayal of the confidence reposed in them by plaintiff. This they may not do; such conduct is abhorrent to our conception of ordinary honesty."

Appellee here claims that this is an action of bad faith because of a breach of a confidential relationship, and—we think, successfully—maintains that the cases above hold that the law will not allow one to enjoy a breach of confidence to the detriment of those who confided in him.

 Appellants also maintain that there is not sufficient pleading and proof that appellee has suffered or will suffer damage. We think there is sufficient evidence that Mr. Luccous had copied the tool and was using it in competition with the appellee. In summation of this point, then,

we believe the record here discloses that appellants, and Mr. Luccous in particular, gained their knowledge and the use of the tools by virtue of a licensing agreement constituting a confidential relationship; that the tools and the method of their use constituted a trade secret, and that—therefore—the trial court, with the broad powers vested in him, was correct in granting the temporary injunction restraining appellants from using, renting or leasing any of the tools secured from appellee, or tools copied or made substantially in accordance with such tools. Frequent reference has been made to this court's holding, in Furrs Inc. v. United Specialty Advertising Co., 338 S.W.2d 762. We do not think that this case has any particular application here, as there it was a salesman unsuccessfully attempting to make a deal with a potential customer, involving a bonus card that was being and had been issued by the thousands. There was no confidential relationship ever established in this case because no deal was ever entered into, nor do we believe that the device offered was in any sense a trade secret.

■ Also, we do not find any merit in appellants' arguments relating to the jurisdiction of the State district court, as this is clearly a contractual controversy not involving any patent infringement.

■ Appellants' Points 2 and 3 argue that there is no evidence that appellant John C. Luccous, Senior, was using, renting or leasing such tools, and that any such finding is against the overwhelming weight and preponderance of the evidence. We believe there is sufficient evidence present, as it appears in the record that Mr. Luccous, Senior had rented the copied tool to persons on several occasions, and Mr. J. D. Whiteside testified that he had rented the sand line cutter from Mr. Luccous eight or nine times. We believe that there was enough evidence to support the broad discretion accorded to the trial judge in a matter of this type.

■ Appellants' fourth and fifth points argue that appellee failed to show that it did not have adequate remedy at law, or that it might suffer irreparable injury. We do not think that merit exists in these two points for the very reason that it would be difficult to estimate the damages at law, and competition and copy would certainly damage appellee if not restrained. We feel that it has been established in Texas that trade secrets may be protected by injunction and that injunction will lie to protect the owner or inventor of any formula, patent or device, which gives such owner or inventor an advantage over competition. 31 Tex.Jur.2d 156, Injunctions, § 75. We think the legal phase is well stated in the case of Vann v. Toby, 260 S.W.2d 114 (Dallas Tex.Civ.App.), wherein the court says:

> "One who invents or discovers a secret process of manufacture, whether a proper subject for patent or not, has not an exclusive right to it as against the public, or against those who in good faith acquire knowledge of it, yet he has a property in it which a court of chancery will protect against one who in violation of contract and breach of confidence undertakes to apply it to his own use, or to disclose it to third persons."

(Also, Hyde Corp. v. Huffines, supra; and K & G Oil Tool & Service Co. v. G & G Fishing Tool Service, supra.)

We believe these cases show that when appellee makes showing, as he has here, of probable injury resulting from breach of confidence or trust, that the broad discretionary powers of the trial judge permit and authorize him to issue the injunction as was done here.

■ Appellants' sixth point claims that appellee has failed to show any "status quo" or the necessity of maintaining same. We do not think this point has sufficient merit to warrant either reversal or long discussion. Cases above cited have pointed out

that injunctive relief may be employed where one breaches his confidential relationship in order to unfairly use a trade secret. The court, in Incinomode, Inc. v. Research Products Manufacturing Co., Tex. Civ.App., 332 S.W.2d 805, said:

"An injunction will lie to restrain the manufacture and sale of mechanisms embodying trade secrets disclosed in the course of contractual relations between the parties."

We do not think that these cases are those where the "status quo" is the main issue, but rather that injunction will issue to prevent loss and damage.

■ Appellant's seventh point states that "the District Court clearly abused its discretion by the issuance of the injunction against Appellant because Appellee, J. C. Kinley Company, has no privity or legal rights under the contract upon which he predicates his entire claim of right." We do not believe there is merit in this point, as the record discloses that all parties apparently acted under the belief that the agreement was in force, at least until February 22, 1962, and the agreement itself stated that it would continue until the expiration of certain patents, one of which was still in effect. It is also clear that the intent of the parties was correctly interpreted and found by the trial court, wherein he found that it had not terminated prior to February 21, 1962 and that all parties to the various transfers and sales had contemplated the continuation of the licensing agreement. In any event Mr. Luccous, Senior was the one who had entered into the licensing agreement, and was the one who was leasing or renting copies of the tool, which copies he himself had made.

We have considered the many cases cited and discussed by appellants in their original brief, but we do not believe that any of these cases is decisive of or contradictory to our holding. We will not enter into a detailed discussion of these cases, as they are so well set forth in appellants' brief that

such would be unnecessary; and, to our minds, the various holdings are clearly enunciated in such briefs.

For the reasons set forth above, appellants' first seven points and their subdivisions are all overruled.

■ We pass now to the brief filed for appellant J. C. Luccous, Junior. Points 8 and 9 thereof, allege that the court abused its discretion in issuing the injunction because there was no evidence that J. C. Luccous, Junior was using, renting or leasing any such tools, and any findings to such effect would be against the overwhelming weight and preponderance of the evidence. We believe these points to be without merit, as the record discloses that J. C. Luccous, Junior was in the sand line cutting business and that he was using "Kinley's" tools. This evidence and the verified pleadings justified the court, under his broad powers and discretion, in issuing the temporary injunction, especially since we have here an unsworn general denial.

■ In a supplementary brief appellants argue that there was no trade secret involved here because the tools had been patented, one of the patents had expired, and the tools had been freely advertised. In support of their position appellants attempt to distinguish the case of Welex Jet Services, Inc. v. Owen (supra) on the ground that the trade secrets involved were used in the process of using the property, and appellants further claim that the matter of "trade secret" was not a matter of appeal. We have read this case and cannot agree that there is such a clear-cut distinction as would make the case inapplicable to the case before us. As we have stated above, we believe the record establishes that appellee invented and was using a mechanical device for use in the oil field, and that such invention and the method of using it constituted a trade secret which was obtained by virtue of a fiduciary or confidential relationship between appellants and appellee. Therefore, we hold that the trial court was

well within the confines of his broad discretionary powers in issuing the injunction here in controversy. In so holding we of course reject the assumption that the patenting of a process or the expiration of a patent destroys the obligation of one who obtains a trade secret by virtue of a confidential relationship, said obligation being not to use such confidential knowledge to the detriment of the other party.

Appellants' points are accordingly all overruled, and the decision of the trial court affirmed.