John C. LUCCOUS, Sr., and John C.
Luccous, Jr., Petitioners,

v.

J. C. KINLEY COMPANY, Respondent.

No. A–9744.

Supreme Court of Texas.

March 4, 1964.

Lynch & Chappell, Vann Culp and John Scott, Midland, with above firm, for petitioners.

Stubbeman, McRae, Sealy & Laughlin, W. B. Browder, Jr., and Charles Tighe, Midland, with above firm, for respondent.

SMITH, Justice.

This suit was instituted by respondent, J. C. Kinley, an individual doing business as J. C. Kinley Company, hereafter referred to as plaintiff or Kinley Company, in the District Court of Midland County against John C. Luccous, Sr., and John C. Luccous, Jr., hereafter referred to as defendants or the Luccouses; Luccous Service and Equipment Company, a Texas corporation, and J. D. Whiteside, president and owner of Luccous Company.

In his first amended original petition, plaintiff alleged a breach of contract, and prayed for judgment against the above parties, jointly and severally. Plaintiff further alleged the Luccouses had breached a confidential relationship, and prayed that said defendants be enjoined from using certain tools. On July 20, 1962, after a hearing, the trial court granted a temporary injunction, in accordance with plaintiff's prayer, enjoining the Luccouses, their agents, servants, representatives and employees from using, renting or leasing any sand-line cutter tools (a) "secured from the J. C. Kinley Co.," or (b) "tools copied or made substantially in accordance with such tools." John C. Luccous, Sr., and John C. Luccous, Jr., duly perfected separate appeals, each alleging errors in the judgment of the trial court, to the Court of Civil Appeals for the Eighth Supreme Judicial District at El Paso, Texas. The judgment of the trial court was affirmed. 368 S.W.2d 827. Thereafter both defendants applied to this court for writ of error, and both writs were granted. For the purposes of this opinion, both defendants' contentions shall be considered together unless otherwise designated.

Most of the facts relevant to a determination of this case are undisputed. On January 2, 1940, a U. S. Patent was issued to M. M. Kinley on his invention of certain tools. The tools are sometimes referred to as sand-line cutters, wire-line cutters, cutters, cutting guns and cutting tools. We shall hereafter refer to them as sand-line cutters. On or about January 12, 1956, M. M. Kinley, doing business as M. M. Kinley Company, and Luccous Service and Equipment Company entered into a written license agreement whereby the Kinley Company granted to the Luccous Company a license to use the patented sand-line cutters. The essence of this agreement was as follows: Kinley agreed to supply the sand-line cutters and equipment and parts thereof necessary to perform sand-line cutting operations. In turn, Luccous Company agreed to keep and maintain proper books of account as to all charges made to customers for the operation of the sand-line cutters, and to pay over to Kinley Company, on the 15th day of each month, a tool rental including royalty of 60% of the service charges to the customers for each sand-line cutting operation run by Luccous Company. At the time of this contract, M. M. Kinley owned the M. M. Kinley Company, and defendant, John C. Luccous, Sr., owned most of the stock in Luccous Service & Equipment Company. It is undisputed that certain sand-line cutters were secured by Luccous Company from Kinley Company under and by virtue of this license agreement.

On January 2, 1957, the patent on the sand-line cutters expired. Thereafter on January 1, 1960, some of the assets of M. M. Kinley Company were sold to plaintiff, J. C. Kinley, which assets included the sand-line cutters. Under the terms of sale, plaintiff was assigned the rights and interests in the license agreement noted above. Finally, on April 27, 1961, defendant John C. Luccous, Sr., and his wife, sold and conveyed all of the shares of stock of Luccous Service and Equipment Company

to J. D. Whiteside, who then became and is now its owner and president.

Plaintiff alleged that, subsequent to the above sale to Whiteside, the Luccouses continued to use sand-line cutters which they had secured from the plaintiff under the license agreement. Plaintiff further alleged that defendants were using and renting sand-line cutters which they had personally made from the information and knowledge secured from plaintiff under the licensing agreement. Both courts below have temporarily enjoined defendants from using, renting or leasing the "secured" tools, and the sand-line cutters which they personally made from copies of plaintiff's tools. The trial court judgment, which the Court of Civil Appeals has affirmed, is reversed, and the temporary injunction is dissolved. We shall discuss the two groups of tools separately.

### The "Copied" Tools

Plaintiff contends that the Luccouses should be enjoined from using any sand-line cutters which they have personally made as a result of the knowledge they gained about such tools by virtue of the licensing agreement. Plaintiff argues that the tools constituted a "trade secret," and that defendants gained their knowledge of this "secret" while the confidential relationship created by the licensing agreement existed between plaintiff and defendants. Therefore, plaintiff concludes the lower court's action in enjoining defendants' use of these "copied" tools is supported by the decisions of this court wherein it was held that the equitable remedy of injunction will lie to prevent one person from damaging another through an abuse of confidence in wrongfully appropriating trade secrets. See Hyde Corporation v. Huffines, 158 Tex. 566, 314 S.W.2d 763; K & G Oil Tool & Service Co. v. G & G Fishing Tool Service, 158 Tex. 594, 314 S.W.2d 782. On the other hand, defendants argue that these cases lend no support to the lower court's holdings because "the evidence shows as a matter of law that if [plaintiff's] tool

had ever constituted a 'trade secret,' its secrecy terminated many years prior to the time when defendants obtained knowledge of it."

The generally accepted definition of a "trade secret" is that contained in the Restatement of Torts, § 757, p. 5, as follows:

> "b. *Definition of trade secret.* A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers * * *. A trade secret is a process or device for continuous use in the operation of the business. Generally it relates to the production of goods, as, for example, a machine or formula for the production of an article."

It is self-evident that the subject matter of a trade secret must be secret. See Wissman v. Boucher, 150 Tex. 326, 240 S.W.2d 278. It is defendant's position that when plaintiff patented the sand-line cutters in 1940, the issuance of the patent constituted such a public disclosure of the tools as to destroy their trade secrecy. This being so, defendants conclude that the injunctive relief granted plaintiff is punitive and also futile in that it enjoins defendants from making use of knowledge that is common to all the world. However, plaintiff contends that it is of no consequence that defendants could have gained their knowledge of the sand-line cutters from a study of the patent. Plaintiff argues that since defendants did not so gain their information, but instead gained it as a result of the licensing agreement, plaintiff did not lose the protection the tools might have as a "trade secret," and an injunction will lie even though the tools in

question were the subject of a patent, expired or otherwise. The cases relied upon by the Court of Civil Appeals as supporting plaintiff's position are distinguishable from the present case.

First, in Hyde Corporation v. Huffines, supra, this court held the defendant, a licensee of the plaintiff, should be perpetually enjoined from manufacturing or selling any device made substantially in accordance with any feature of an invention patented by plaintiff. The defendant, as a result of a confidential relationship, had gained knowledge of the plaintiff's invention *prior to its being patented,* while it was still a trade secret. The defendant abused this confidential relationship, and improperly used the information gained. Under these circumstances, this court held the plaintiff's right to injunctive relief for the defendants' wrongful appropriation of trade secrets survived the disclosure of the secret in a subsequent patent. It was not held that the trade secret *itself* survived the complete disclosure in the patent grant. Inasmuch as the defendant had learned the secrets of the plaintiff's invention in confidence, and improperly disclosed and used them before the patent issued, it was held that the defendant should be enjoined from using that knowledge to prevent his obtaining "a marketing advantage or head start as compared to the patentee or any manufacturer or processor licensed by him after the issuance of the patent." In the present case, the defendants have not obtained any "marketing advantages" from having prematurely gained information about the sandline cutters, since defendants received knowledge of the tools some sixteen years after they were patented, and used that knowledge after the patent expired.

The case of K & G Oil Tool & Service Co. v. G & G Fishing Tool Service, supra, is also distinguishable from the present case. First, as in the Hyde case, supra, the defendant had gained knowledge of the plaintiff's invention prior to its being patented, while it was still a trade secret.

Second, under the terms of a licensing agreement, the defendant specifically contracted that during the time it handled the tool in question, no one would disassemble said tool. It was mutually understood that the purpose of such agreement was to guard against anyone determining the internal construction of the tool involved. Notwithstanding this agreement, defendant did disassemble the tool, examined its interior construction and, using the information thus acquired, began making tools substantially in accordance with those of plaintiff. This court held that plaintiff was not deprived of his cause of action for defendant's breach of confidence simply because some of plaintiff's secrets were later disclosed by the issuance of a patent. The question as to whether plaintiff would have been entitled to injunctive relief if defendant had gained knowledge of the invention subsequent to its being patented was not before us in the K & G case.

The Court of Civil Appeals cites the case of Welex Jet Services, Inc. v. Owen, 325 S.W.2d 856, Tex.Civ.App., wr. ref., n. r. e., as authority for the proposition that the issuance of a patent is not a public disclosure which destroys a "trade secret." That case presented a situation where the subject matter of the trade secret protected by the Court was not the same as the invention covered by the patent, as the following language discloses:

"* * * [A]ppellant is the originator and primary developer of the 'Jet Process'; *in addition to its patent rights,* appellant through experimentation has developed many trade secrets which it and its licensees use in the process; * * * during their employment by appellant, Owen and Gearhart, in confidence and while in fiduciary relationships, acquired knowledge of *such trade secrets* and have used and disclosed them for purposes other than for appellant's benefit; * * *." (Emphasis added.)

Thus, unlike the present case, the trade secrets involved were not the inventions

already protected by patent grants. The Court did not hold that a "trade secret" may simultaneously exist with a patent grant when both cover the *same* subject matter.

Finally, the case of Franke v. Wiltschek, 2 Cir., 209 F.2d 493, is not authority for the position taken by the plaintiff. The defendants in that case contended that an expired patent on a process not involved in the suit was so similar to the process that was involved that the old patent had indirectly revealed the alleged "trade secret" with which the case was concerned. The Court held that one could have a "trade secret" over the same *general* subject matter disclosed in an expired patent. The subject matter claimed to be a "trade secret" was not and had not been patented at the time the defendants appropriated the information about it.

■ In the present case, M. M. Kinley had an election as to the means of "protecting" his invention of the sand-line cutters. First, by the patent laws, Congress gave him an opportunity to secure the material rewards for his invention for a limited time, on condition "that he make full disclosure for the benefit of the public of the manner of making and using the invention. . . ." See Scott Paper Co. v. Marcalus Mfg. Co., 326 U.S. 249, 66 S.Ct. 101, 90 L.Ed. 47. Second, he could make no public disclosure of his invention and thereby protect his "trade secret" under the equitable jurisdiction of the state courts. See Becher v. Contoure Laboratories, 279 U.S. 388, 49 S.Ct. 356, 73 L.Ed. 752. Kinley elected to protect his invention by patent. When the patent was granted, the entire patent file and its contents became public property. See Grant v. Raymond, 6 Pet. 218, 8 L.Ed. 376; Sandlin v. Johnson, 8th Cir., 141 F.2d 660; Callman, The Law of Unfair Competition and Trademarks (2nd Ed.) § 533, Patents. Notwithstanding this choice, plaintiff claims the equitable powers of this court are available to protect his "trade secret," a

claim that is totally incompatible with the election to surrender the protection of secrecy in return for a patent. See Hyde Corporation v. Huffines, supra; Wissman v. Boucher, supra.

■ The effect of the present injunction is to deprive the defendants of the right to do that which the public generally may do (e. g., copy plaintiff's sand-line cutters with impunity). While it is true that this court has enjoined persons from the right to avail themselves of the patentee's dedication, we point out that such holdings have been based on the theory that a person's wrongful acts may deprive him of the right which he would otherwise have had as a member of the public. See Hyde Corporation v. Huffines, supra; K & G Oil Tool & Service Co. v. G & G Fishing Tool Service, supra. In the present case, the defendants have committed no original wrong which would give justification for our denying them resort to the patent. We hold that the plaintiff has no "trade secret" for this court to protect, and the equitable remedy of injunction should not be employed to prevent defendants from using the information and knowledge they gained under the licensing agreement to build sand-line cutters, such information having been available to all the world sixteen years prior to the parties' contract.

### The "Secured" Tools

As heretofore noted, defendants have been temporarily enjoined from using, renting or leasing sand-line cutters "secured" from plaintiff under the terms of the licensing agreement. Defendants contend there is no evidence to support the trial court's finding that they are using, renting or leasing tools which were "secured" from plaintiff.

■ It was plaintiff's burden to prove that defendants were in possession of such tools. In regard to defendant, John Luccous, Jr., this burden has not been met since there is not one scintilla of evidence

that he is renting, leasing or using tools "secured" from plaintiff. In regard to defendant, John Luccous, Sr., it is undisputed that at one time he did have sand-line cutters which he had acquired under the terms of the license agreement. However, plaintiff testified that he had no personal knowledge of any sand-line cutters owned by him which were still in the defendants' possession. Furthermore, the testimony of J. D. Whiteside, which was introduced by plaintiff, was that he had acquired all of the plaintiff's tools from defendant and had returned them to plaintiff. Since there is no evidence that defendants failed to return any sand-line cutters to plaintiff, the temporary injunction is futile. If the evidence shows no intention on the part of a defendant to do the thing sought to be enjoined, then an injunction should be denied. See Davis v. Upshur County, 191 S.W.2d 524, Tex.Civ.App., no wr. hist.

■ Plaintiff argues this is a breach of contract as well as a trade secret case, and in his petition he sets forth several alleged violations by defendants of the license agreement. The only issue necessary for decision by this court is whether or not the lower courts have erroneously enjoined defendants from using sand-line cutters allegedly "copied" or "secured" from plaintiff and from personally manufacturing such tools now and in the future. It is undisputed by the testimony of the plaintiff himself that the license agreement has been terminated by written agreement since February 21, 1962. This being so, it has no relevancy as to the propriety of the injunction. If defendants have breached the terms of the agreement, plaintiff's remedy is damages, and not injunction.

■ An applicant for a temporary injunction seeks extraordinary equitable relief in that he seeks to immobilize a person from a course of conduct which that person may have a legal right to pursue. See Camp v. Shannon, 162 Tex. 515, 348 S.W. 2d 517. In the present case, the trial court and Court of Civil Appeals have enjoined defendants on the basis of the well-settled rule that injunctive relief may be employed when one breaches his confidential relationship in order to unfairly use a trade secret. As heretofore noted, the above rule is not presently applicable.

The judgments of the trial court and Court of Civil Appeals are reversed, and the temporary injunction dissolved.