Garth v. Staktek 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 



ON MOTION FOR REHEARING


 





NO. 3-93-560-CV





EMORY GARTH AND RTB TECHNOLOGY, INC.,


 

 APPELLANTS


vs.





STAKTEK CORPORATION, CARMEN D. BURNS, AND ROBERT B. CAMPBELL,



 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 93-07974, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING



 





 The opinion issued by this Court on April 6, 1994, is withdrawn, and the following
is substituted in lieu thereof. 

 The question presented is whether a temporary injunction should be upheld against
a corporation and an individual who would otherwise continue to make use of certain trade secrets
obtained through a prior confidential relationship.



 BACKGROUND


 In January 1990, Emory Garth, Carmen Burns, and Robert Campbell formed BCG
Ventures to produce a three-dimensional high-density memory package for mini- and
microcomputer application. On January 15, 1990, Burns and Garth signed a nondisclosure
agreement covering information exchanged during that venture, excepting information that
otherwise becomes "publicly available." The parties decided to dissolve their venture roughly
three months later, after Burns had made some important break-throughs in product design. In
April 1990, all three venturers signed a letter of agreement that Burns would retain all rights to
the intellectual property he created while working with BCG Ventures. Most importantly, Burns
had developed a "radiator" design that enables heat to escape stacked integrated circuits, which
the parties acknowledge to be "the key concept needed to make the initial product concept
manufacturable."

 In June 1990, Burns and Campbell formed Staktek Corporation to produce Burns's
memory module. Garth joined RTB Technology, Inc. in 1991, and this company attempted to
license a competing product using the radiator principle. To protect his design, Burns filed patent
applications with the United States Patent Office and the World International Property
Organization. On February 20, 1992, the Gazette, a publication of the World Intellectual
Property Organization in Brussels, published an abstract of Burns's international patent
application. In an October 1992 newspaper article, RTB Technology revealed some of its
activities and announced its affiliation with Microelectronics and Computer Technology
Corporation (MCC). In June 1993, another article provided additional information about RTB
Technology's new product. In July 1993, Staktek Corporation, Burns, and Campbell ("Staktek")
brought suit to enjoin RTB Technology and Garth ("RTB") from using or distributing Staktek's
trade secrets. The trial court issued a temporary injunction from which RTB appeals. 

 In six points of error, RTB asserts that the trial court erred in granting injunctive
relief because: (1) the trade secrets in question had been publicly disclosed in February 1992,
after which others could freely use Staktek's confidential information; (2) RTB did not make
commercial use of the trade secrets before Staktek's public disclosure; (3) the Supremacy Clause
of the United States Constitution preempts Texas law from granting injunctive relief to protect
patents under these circumstances; (4) prior restraint on free speech is unconstitutional; (5) Staktek
has an adequate remedy at law; and (6) laches should bar this action because of Staktek's
unreasonable delay in seeking injunctive relief. We will affirm the trial court's order.



STANDARD OF REVIEW


 A trial court's order granting a temporary injunction may be reversed only on a
showing of a clear abuse of discretion. Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978). To
obtain a temporary injunction, the applicant need demonstrate only a probable injury and a
probable right of recovery. Transport Co. of Tex. v. Robertson Transports, 261 S.W.2d 549, 552
(Tex. 1953). Such a showing demonstrates a right to preserve the status quo. Franklin Sav. Ass'n
v. Reese, 756 S.W.2d 14, 15 (Tex. App.--Austin 1988, no writ). An abuse of discretion occurs
when the trial court arbitrarily or unreasonably finds a probable injury and a probable right of
recovery. Id.



DISCUSSION


Public Disclosure of Trade Secrets


 In its first point of error, RTB claims that on February 20, 1992, Staktek publicly
disclosed its trade secrets, after which RTB was free to use this information. RTB further asserts,
in its second point of error, that it did not make any commercial use of the trade secrets before
this public disclosure. In its fifth point of error, RTB claims that injunctive relief after a public
disclosure is inappropriate because its only liability to Staktek, if any, would be for monetary
damages.

 The dispute centers on whether Staktek's trade secrets may be protected after public
disclosure, whether the abstract published in Brussels was a public disclosure, and whether RTB
commercially used Staktek's technology before this disclosure. We begin by examining RTB's
actions before February 1992. By the time the Gazette published Staktek's patent application,
RTB had completed the basic design for its competing device, consulted a patent attorney about
protecting this design, and sought financing from investors for the development of this product. 
RTB claims that these activities do not constitute a commercial use because it had not commenced
production or sales of a final product. We disagree. Any misappropriation of trade secrets,
followed by an exercise of control and domination, is considered a commercial use. University
Computing Co. v. Lykes-Youngstown Corp., 504 F.2d 518, 542 (5th Cir. 1974). The trial court
held that using a trade secret to produce a design for which a patent application is then submitted
is a commercial use. Additionally, commercial use encompasses using a product design to
procure financing for development of that product. The trial judge was not unreasonable in
determining that RTB had used Staktek's technology before February 1992. We overrule RTB's
second point of error.

 Injunctive relief may be proper to prevent a party that has appropriated another's
trade secrets from gaining an unfair market advantage. To obtain injunctive relief, an applicant
must show the following: (1) the existence of a wrongful act; (2) the existence of imminent harm;
(3) the existence of irreparable injury; and (4) the absence of an adequate remedy at law. Hues
v. Warren Petroleum Co., 814 S.W.2d 526, 529 (Tex. App.--Houston [14th Dist.] 1991, writ
denied). The trial court found that it was more probable than not that RTB had used Burns's trade
secrets to develop its competing product. RTB submitted the plans for this product to its patent
lawyers before the Brussels publication. RTB's "use" of trade secrets before such information
was allegedly disclosed to the public is a wrongful act that makes imminent financial harm from
unfair competition clearly foreseeable. An irreparable injury exists when unfair competition
deprives the initial producer of a fair opportunity to market its product. Lost opportunity to create
or gain control of a new market may result in unquantifiable losses for which there is no adequate
remedy at law. See Hyde Corp. v. Huffines, 314 S.W.2d 763, 773 (Tex. 1958) ("An award of
damages for patent infringement might well prove inadequate to fully protect the one whose
confidence had been violated."). 

 But in cases involving trade secret violations, is injunctive relief proper after the
confidential information has entered the public domain? In technological industries, the design
stage and the start-up phase provide the creator of a new device a period in which to market the
new product before potential competitors are able to copy the technology. By appropriating
Staktek's confidential information before its publication, RTB was able to prepare to enter the
market at the same time as Staktek, and thus could deprive Staktek of the competitive advantage
offered by the normal developmental period. Additionally, a single industrial standard generally
dominates the market for computer components. The trial court found that only one product is
likely to survive, and that RTB's licensing a competing product with major manufacturers would
probably destroy Staktek's opportunity to develop the standard and market its product. To
provide any real protection in situations in which the competing company uses the creator's trade
secrets to concurrently develop a similar product, injunctive relief beyond the date the company
creating the technology publicizes its product is an appropriate remedy. Hyde Corp., 314 S.W.2d
at 773-74; see also K & G Oil Tool & Serv. Co. v. G & G Fishing Tool Serv., 314 S.W.2d 782,
790-91 (Tex. 1958). 

 In ruling on RTB's first point of error we do not decide whether the publication of
the patent application in the Gazette was sufficient disclosure to permit other parties to make use
of Staktek's technology after February 1992. Because the trial court determined that RTB had
appropriated Staktek's trade secrets before that date, and because the court could have determined
that imposing injunctive relief beyond that date was the only way to protect Staktek from RTB's
concurrent marketing of a similar product, we hold that the trial court did not err in granting
continuing injunctive relief against RTB.

 RTB claims that, regardless of its previous acts, it is entitled to use Staktek's
technology after the Gazette publication by virtue of the nondisclosure agreement signed in
January 1990. However, RTB's misappropriation of trade secrets before February 1992 permitted
the trial court to grant injunctive relief despite the publication in Brussels and regardless of
whether it was a public disclosure of confidential information. Luccous, 376 S.W.2d at 340 ("[A]
person's wrongful acts may deprive him of the right which he would otherwise have had as a
member of the public.") (citing Hyde Corp. v. Huffines, 314 S.W.2d 763 (Tex. 1958)). We
overrule RTB's first and fifth points of error.



Prior Restraint on Expression


 In its fourth point of error, RTB claims that the district court's injunction violates
the United States and Texas Constitutions by ordering a prior restraint on expression. Texas
operates under the "well-settled rule that injunctive relief may be employed when one breaches
his confidential relationship in order to unfairly use a trade secret." Luccous v. J. C. Kinley Co.,
376 S.W.2d 336, 341 (Tex. 1964). However, the application of this rule must still be
constitutional. Because the free speech rights under the Texas Constitution, article I, section 8,
are more extensive than the guarantees provided by the United States Constitution, we need only
determine whether this form of prior restriction on free speech is permitted in Texas. Davenport
v. Garcia, 834 S.W.2d 4, 8 (Tex. 1992).

 Texas law begins with the presumption that prior restraints on free speech are
unconstitutional. Davenport, 834 S.W.2d at 9. However, prior restraints may be permitted to
prevent an imminent and irreparable harm, so long as no less restrictive alternative form of
protection is available. Id. at 10. In Davenport, the supreme court held that a gag order would
be permitted if "imminent and irreparable harm to the judicial process will deprive litigants of a
just resolution of their dispute." Id. Similarly, injunctions against trade secret violations may be
necessary to provide meaningful legal protection to the owners of intellectual property. Monetary
compensation may not sufficiently protect the creator of a new product from unfair competition
by those who improperly appropriate confidential information. Hyde Corp., 314 S.W.2d at 773. 
In this case, the trial court reasonably found that RTB's improper use of confidential information
might imminently and irreparably harm Staktek.

 Despite the existence of an imminent and irreparable harm, an injunction may be
granted only when it is the least restrictive means of providing appropriate relief. When the court
attempts to protect trade secrets, speech itself may cause the harm meant to be guarded against. 
Considering RTB's earlier attempts to sell the protected technology to other computer-parts
manufacturers, there appears to be no less restrictive method of protecting Staktek than enjoining
RTB from disseminating the technology or revealing to third parties the manner of design and
manufacture of the device. Under these circumstances, the injunctive relief granted is not an
unconstitutional prior restraint. We overrule RTB's fourth point of error.



Federal Preemption


 In its third point of error, RTB claims that the Supremacy Clause of the United
States Constitution preempts states from enjoining disclosures that are permitted under federal
patent law: "[S]tate regulation of intellectual property must yield to the extent that it clashes with
the balance struck by Congress in our patent laws." Bonito Boats v. Thunder Craft Boats, 489
U.S. 141, 152 (1989). However, Bonito Boats expressly excepts state actions that do not directly
interfere with federal patent law. Id. at 155. The Court further determined that "state protection
of trade secrets . . . [does] not conflict with the federal patent law," because it advances "goals
outside the contemplation of the federal patent scheme" in a manner "not aimed exclusively at the
promotion of the invention itself." Id. at 166. Trade secret law is intended to prevent ideas from
being directly stolen, rather than copied, and only applies to the small group of people privy to
confidential information. Id. at 155. The Texas Supreme Court has also distinguished trade
secret law from patent law:

 


If, as has been said in numerous cases, the equitable remedy of injunction to
prevent one person from damaging another through an abuse of confidence in
wrongfully appropriating trade secrets is a separate remedy and incident to a
different right than that secured by a patent, it would seem that injunctive
protection of the trade secret as against a licensee should not necessarily cease
upon the issuance of a patent.



Hyde Corp., 314 S.W.2d at 773.

 RTB argues that, under Luccous, the state may not use trade secret law to prevent
an invention from being copied by another manufacturer. In Luccous, however, the supreme court
refused to grant relief because it found that no trade secret existed. Luccous, 376 S.W.2d at 340. 
In so doing, the court distinguished that case from Hyde Corporation, and reaffirmed the rule that
"a person's wrongful acts may deprive him of the right which he would otherwise have had as a
member of the public." Id. Because we find no conflict between federal patent law and state laws
protecting trade secrets under these circumstances, we overrule RTB's third point of error.



Unreasonable Delay


 In its sixth point of error, RTB claims that this suit for injunction was barred by
laches. However, Texas caselaw does not prevent injunctive relief merely because a potential
plaintiff did not file a claim as quickly as possible. In a similar suit, the Texas Supreme Court
allowed a case to be brought a year after a competitor began production using the first producer's
trade secrets. K & G Oil Tool & Serv. Co., 314 S.W.2d at 790-91.



As a rule equity follows the law and generally in the absence of some element of
estoppel or something akin thereto, the doctrine of laches will not bar a suit short
of the period set forth in the limitation statutes. Considering the past business
relations between the parties and the lack of any positive action or deliberate
nonaction on the part of petitioners which could reasonably be considered as
having induced respondents to act to their disadvantage, there is no basis for a
shortening of the limitation period, so to speak. 



Id. at 791. 


 In the present case, Staktek filed this suit only nine months after learning that RTB
might be using its trade secrets. In October 1992, two weeks after Staktek had learned that RTB
was working on a competing product, Staktek's attorney wrote RTB Technology, MCC, and
Garth to notify them of their possible trade secret infringement and of Staktek's pending patent. 
At the time, Staktek did not know if RTB's product used Burns's design, but it reserved its rights
to take future legal action. A picture of RTB's product, published in June 1993, demonstrated
RTB's use of Staktek's technology; Staktek filed this suit the following month.

 RTB claims it was harmed when Staktek did not file suit as soon as it learned that
RTB was producing a competing product. RTB continued to invest substantial sums over the next
nine months, while Staktek refused to swap technologies. The evidence suggests that Staktek did
not learn that RTB was actually using Staktek's design until June 1993. Additionally, although
Staktek refused to discuss its technology with RTB, it repeatedly expressed its intention to enforce
any infringement of its trade secrets. These letters should have spurred RTB to determine its
possible liability for trade secret infringement before continuing production plans. Staktek did not
induce RTB to act to its own disadvantage. We overrule RTB's sixth point of error.



CONCLUSION


 Concluding that the trial court did not abuse its discretion in granting the requested
injunctive relief, we affirm the order.



 

 Bea Ann Smith, Justice

Before Justices Powers, Kidd and B. A. Smith 

Affirmed

Filed: May 18, 1994

Publish