# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00064-CV

**Hugh Maxwell Roth, Appellant**

v.

**Jose Montemayor, Commissioner of Insurance of the State of Texas, and Texas Department of Insurance, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. 98-07551, HONORABLE ERNEST C. GARCIA, JUDGE PRESIDING

Appellant Hugh Maxwell Roth appeals from the district court's final judgment in favor of appellees Jose Montemayor, Commissioner of Insurance of the State of Texas,[1] and the Texas Department of Insurance (together the "Commissioner"), affirming the Commissioner's order to cease and desist from "doing any kind of insurance business." We will affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1991 the Commissioner issued an order revoking Roth's Group I, Legal Reserve Life Insurance Agent's License and Group II, Insurance Agent's License pursuant to section 10 of article 21.07 and section 12 of article 21.07-1 of the insurance code.[2] *See* Tex. Ins. Code Ann. art

---

[1] This appeal was originally filed in the name of the predecessor to the present Commissioner of Insurance of the State of Texas. We have substituted the current holder of that office as the correct party to this proceeding. *See* Tex. R. App. P. 7.2.

[2] As grounds for the revocation of Roth's licenses in 1991, the Commissioner concluded that Roth had "demonstrated a lack of trustworthiness and competence to act as an

21.07, § 10, art. 21.07-1, § 12 (West Supp. 2001). Roth's motion for rehearing was denied,[3] and he appealed to district court,[4] where, in 1995, a jury found that Roth had engaged in willful deception, fraud, misrepresentation, and misappropriation of funds in violation of the insurance code. On August 1, 1995, the district court signed a judgment revoking Roth's licenses. Roth did not appeal the district-court judgment.

However, before the judgment was rendered, Roth applied for employment as an agent for three fraternal benefit societies. *See* Tex. Ins. Code Ann. art. 10.01 (West Supp. 2001). The insurance code defines a fraternal benefit society ("fraternal") as

> [a]ny corporation, society, order or voluntary association, without capital stock, organized and carried on solely for the mutual benefit of its members and their beneficiaries, and not for profit, and having a lodge system and representative form of government, and which shall make provision for the payment of benefits in accordance with Article 10.05.

*Id*. art. 10.01(a). In addition, the insurance code generally exempts fraternals from other sections of the code:

> Except as herein provided, such societies shall be governed by this chapter and shall be exempt from all provisions of the insurance laws of this State, not only in governmental relations with the State, but for every other purpose. *No law hereafter enacted shall apply to them, unless they be expressly designated therein.*

*Id*. art. 10.04 (West 1981) (emphasis added).

---

insurance agent" and had "been guilty of dishonest practices."

[3]   *See* Tex. Gov't Code Ann. § 2001.146 (West 2000).

[4]   *See id*. § 2001.171.

Seven days *after* the district-court judgment, Roth entered into a commercial-agent agreement with Western Fraternal Life Association and received insurance applications and premiums from at least fifteen individuals in the following fourteen months. Twenty-four days after the judgment, Roth agreed to act as an agent for CSA Fraternal Life Insurance Company and received insurance applications and premiums. A little over two months after the judgment, a third fraternal, United Commercial Travelers of America, offered Roth an agency position, which he accepted. He received insurance applications and premiums from at least ten individuals in the following eight months pursuant to that agreement. Roth received commissions on all policies he sold on behalf of the three fraternals.

Roth has not been involved with any of the fraternals since 1996. In April 1997 the Commissioner issued a "Notice of Hearing and Statement of Charges," seeking a cease and desist order against Roth for violations of section 3(b) of article 1.14-1 of the insurance code. *See* Tex. Gov't Code Ann. § 2001.051 (West 2000) (notice requirement). Section 3(b) of article 1.14-1 prohibits the unauthorized practice of insurance. *See* Act of May 27, 1985, 69th Leg., R.S., ch. 918, § 2, 1985 Tex. Gen. Laws 3088, 3089 (Tex. Ins. Code Ann. art. 1.14-1, § 3(b), since repealed and codified at Tex. Ins. Code Ann. § 101.102(a) (West Supp. 2001)).

A hearing was held before an administrative law judge assigned by the State Office of Administrative Hearings. *See* Tex. Gov't Code Ann. § 2001.058 (West 2000). The Commissioner adopted the judge's proposal for decision and issued the cease and desist order at issue here. *See* Act of May 27, 1989, 71st Leg., R.S., ch. 1025, § 1, 1989 Tex. Gen. Laws 4122, 4122 (Tex. Ins. Code Ann. art. 1.14-1, § 3(e), since repealed and codified at Tex. Ins. Code Ann. § 101.103 (West Supp.

3

2001)) (authority to issue cease and desist orders). In summary, the cease and desist order directs Roth to refrain from acting as an insurance agent, receiving any application for insurance, receiving any premium or commission, or doing any kind of insurance business as defined by the insurance code.

Roth appealed to the district court,[5] which affirmed the Commissioner's order. By five issues, Roth appeals the district court's judgment.[6]

## DISCUSSION

*Sufficiency of the Commissioner's Notice*

By his second issue, Roth argues that the Commissioner's notice of hearing limits the grounds for its punishment. We first address Roth's contention that the notice limits the grounds upon which the Commissioner can base his order. The government code provides that a notice of a hearing in a contested case must include "a reference to the particular sections of the statutes and rules involved." Tex. Gov't Code Ann. § 2001.052 (West 2000). In addition, "[f]indings of fact may be based only on the evidence and on matters that are officially noticed." *Id.* § 2001.141(c).

The Commissioner's notice of hearing states the following in its heading: "NOTICE OF PUBLIC HEARING; DOCKET NO. 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.C; TO CONSIDER WHETHER A CEASE AND DESIST ORDER SHOULD BE ENTERED AGAINST HUGH MAXWELL ROTH . . . FOR ENGAGING IN THE UNAUTHORIZED BUSINESS OF INSURANCE IN VIOLATION OF

---

[5]   *See* Tex. Gov't Code Ann. § 2001.171.

[6]   Roth's brief includes seven items listed under "Issues Presented"; however, it restates and groups the issues as five issues in its argument. The five restated issues do not abandon any issues listed in the original seven. We will refer to the more concise restatement.

4

ARTICLE 1.14-1 §3(B) OF THE TEXAS INSURANCE CODE." In the body of the six-page

notice, the Commissioner alleges the following:

> HUGH MAXWELL ROTH'S [previous] insurance licenses were revoked pursuant to articles 21.07-1 §12 and 21.07 §10.
>
> . . . .
>
> . . . [A]rticle 21.07-1 of Texas Insurance Code provides that a "person whose license has been revoked under Section 12"of 21.07-1 "may not solicit or otherwise transact business under Chapter 10 of this code." As alleged . . . , HUGH MAXWELL ROTH'S Group I license was revoked pursuant to Section 12 of article 21.07-1.

The notice provided by the Commissioner was sufficient to alert Roth that the Commissioner would

rely on article 21.07-1 in determining whether he had violated article 1.14-1.[7] Roth could not be

surprised by the Commissioner's finding a violation of article 21.07-1. We overrule Roth's second

issue.

***Article 1.14-1***

By his first issue, Roth argues that he did not violate section 3(b) of article 1.14-1 of

the insurance code. Statutory construction is a question of law, *Johnson v. City of Fort Worth*, 774

S.W.2d 653, 656 (Tex. 1989), the resolution of which must begin by looking to the plain and

---

[7]     The Commissioner agrees with Roth that the cease and desist order can only be based on violations of article 1.14-1; he states that "[a] plain reading of both the Notice and the Order . . . establishes that Article 1.14-1 is the only statute Roth is alleged and found to have violated." The Commissioner continues that the order merely shows that the Commissioner relied on other sections of the insurance code in determining that article 1.14-1 was violated. We disagree that the order finds that the only statute Roth violated was article 1.14-1; it clearly finds that Roth violated article 21.07-1. We add, however, that such a finding is necessary to the Commissioner's finding a violation of article 1.14-1.

common meaning of the statute's words. *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex. 1998).

The relevant statute, section 3(b) of article 1.14-1, states, "No person or insurer shall directly or indirectly do any of the acts of an insurance business set forth in this Article except as provided by and in accordance with the specific authorization of statute." Act of May 27, 1985, 69th Leg., R.S., ch. 918, § 2, 1985 Tex. Gen. Laws 3088, 3089 (Tex. Ins. Code Ann. art. 1.14-1, § 3(b), since repealed and codified at Tex. Ins. Code Ann. § 101.102(a)). "Doing an insurance business" includes:

[1.] The taking or receiving of any application for insurance.

[2.] The receiving and collection of any premium, commission, membership fees, assessments, dues or other consideration for any insurance or part thereof.

. . . .

[3.] Directly or indirectly acting as an agent for or otherwise representing or aiding on behalf of another any person or insurer in the solicitation, negotiation, procurement or effectuation of insurance or renewals thereof or in the dissemination of information as to coverage of rates, or forwarding of applications, or delivery of policies or contracts, or inspection of risks, a fixing of rates or investigation or adjustment of claims or losses or in the transaction of matters subsequent to effectuation of the contract and arising out of it, or in any other manner representing or assisting a person or insurer in the transaction of insurance with respect to subjects of insurance resident, located or to be performed in this state.

Act of April 27, 1967, 60th Leg., R.S., ch. 185, § 1, 1967 Tex. Gen. Laws 400, 402 (Tex. Ins. Code Ann. art. 1.14-1, § 2(a), since repealed and codified at Tex. Ins. Code Ann. § 101.051 (West Supp. 2001)). It is undisputed that at least some of Roth's activities for the fraternals fall within these descriptions.

A "person" in this section includes fraternals. *See* Tex. Ins. Code Ann. art 21.21, § 2(a) (West Supp. 2001). However, the insurance code also provides that fraternals are exempt from the insurance laws unless fraternals are "expressly designated therein." *See id*. art. 10.04. The Commissioner argues that when a fraternal is engaging in "acts of an insurance business," it can only legally do so "in accordance with the specific authorization of statute." Act of May 27, 1985, 69th Leg., R.S., ch. 918, § 2, 1985 Tex. Gen. Laws 3088, 3089 (Tex. Ins. Code Ann. art. 1.14-1, § 3(b), since repealed and codified at Tex. Ins. Code Ann. § 101.102(a)). Roth answers that "the specific authorization of statute" comes from article 10.04 of the code, which exempts fraternals "from all provisions of the insurance [code] . . . for every . . . purpose." Tex. Ins. Code Ann. art. 10.04. He continues that article 10 provides the basis for fraternals to engage in the above described activities—to take applications for insurance, collect premiums, and act as agents.

We agree with the Commissioner that Roth violated section 3(b) of article 1.14-1 but for a slightly different reason.[8] Article 1.14-1 forbids *Roth* from engaging in the unauthorized practice of insurance. Whether or how article 1.14-1 applies to fraternals is irrelevant because the statute's prohibition clearly applies to Roth as an individual. Thus if Roth, as an individual who takes applications for insurance, collects premiums, and acts as an agent, violates a section of the insurance code, he is engaging in the unauthorized business of insurance.

---

[8] The Commissioner relies on two statutes in his analysis—article 21.07-3 and article 10.37-2. Article 10.37-2 states, "A fraternal benefit society may not employ or otherwise retain a person to solicit business if that person has had a license revoked under Articles 21.07[, 21.07-1,] or 21.14." Tex. Ins. Code Ann. art. 10.37-2 (West Supp. 2001). However, this section is a prohibition on fraternals and could not provide the basis for Roth's unauthorized practice of insurance.

7

Section 3(c) of article 21.07-1 of the code provides that "[a] person who has had a license revoked under Section 12 of this Act may not solicit or otherwise transact business under Chapter 10 of this code." *Id*. art. 21.07-1, § 3(c) (West Supp. 2001). The Commissioner's order included the following conclusions:

[1.] As of August 1, 1995, the Texas insurance licenses held by [Roth] were revoked, pursuant to TEX. INS. CODE ANN. arts. 21.07 and 21.07-1. [Roth] has not been granted any additional licenses by the Texas Department of Insurance since that time.

[2.] Article 21.07-1, Sec. 3(c), provides that a person who has had a license revoked under Sec. 12 of that act . . . may not solicit or otherwise transact business under Chapter 10 of the Insurance Code. Chapter 10 of the Insurance Code is entitled "Fraternal Benefit Societies."

[3.] Based on . . . Conclusions [1 and 2, among others, Roth] is a person who engaged in the business of insurance in violation of Article 1.14-1.

[4.] Based on the foregoing, a cease-and-desist order should be issued ordering [Roth] to refrain from engaging in certain activities related to the business of insurance.

Roth does not dispute that his licenses were revoked pursuant to section 12 of article 21.07-1. Roth has violated section 3(c) of article 21.07-1, thus his engaging in the business of insurance was not specifically authorized by the insurance code. We hold that Roth violated article 1.14-1 and overrule his first issue.

***Violations of Agency Rulemaking Procedure***

By his third issue, Roth claims that

the Commissioner violated [the government code] by seeking and providing a new rule of general applicability through an [o]fficial [o]rder without compliance with the

8

rulemaking procedures and notice requirements contained in the Administrative Procedure Act. Specifically, a new rule [(1)] subjecting fraternal benefit societies to art. 1.14-1, [(2)] defining the issuance of fraternal policies as the business of insurance, [(3)] requiring that fraternal agents be licensed, and [(4)] abrogating the exemptions they enjoyed under Chapter 10 was fashioned by order of the Commissioner without notice of the new rule's potential effect to all affected persons.

We do not agree that sections 2001.021 through 2001.039 of the government code, which govern agency rulemaking procedure, are implicated by the Commissioner's order. *See* Tex. Gov't Code Ann. §§ 2001.021-.039 (West 2000). Even if we accept Roth's argument that article 1.14-1 does not apply to fraternals, the Commissioner's order may still validly rely on article 1.14-1. Indeed, we have so held. The order's statement that article 1.14-1 applies to fraternals is surplusage and unnecessary to the finding that Roth violated article 1.14-1 as an individual.

In addition, the order does not require fraternal agents to be licensed.[9] The Commissioner's order only requires that Roth not violate 1.14-1, something he had recently done by violating section 3(c) of article 21.07-1 in soliciting business for fraternals after the revocation of his insurance agent licenses.

Finally, Roth directs us to an opinion by the First Court of Civil Appeals, arguing it holds that fraternals are not engaged in the business of insurance. *See Kennedy v. Laird*, 503 S.W.2d 664 (Tex. Civ. App.—Houston [1st Dist.] 1973, no writ). In *Kennedy*, the court of civil appeals stated that a policy issued by a fraternal was not an insurance policy. *See id.* at 665. But Roth's

---

[9] We note that the legislature has since amended the insurance code to now require agents for fraternals to be licensed. *See* Act of May 18, 1999, 76th Leg., R.S., ch. 432, § 18, 1999 Tex. Gen. Laws 2799, 2800 (codified at Tex. Ins. Code Ann. art 10.37-3 (West Supp. 2001)).

reliance on *Kennedy* is misplaced. Since *Kennedy* was decided in 1973, the legislature has amended the insurance code to include fraternals in the group of "persons" that may not engage in the unauthorized practice of insurance. *See* Act of May 27, 1985, 69th Leg., R.S., ch. 918, § 2, 1985 Tex. Gen. Laws 3088, 3089 (Tex. Ins. Code Ann. art. 1.14-1, § 3(a), since repealed and codified at Tex. Ins. Code Ann. § 101.101(a) (West Supp. 2001)); *see also* Tex. Ins. Code Ann. art. 21.21, § 2(a).[10]

We overrule Roth's third issue.

### *Review of Administrative Record*

By Roth's fifth issue, he claims that the district court "did not review excerpts from the administrative record." We assume that Roth is asserting that the district court abused his discretion in ruling without reviewing the administrative record. The record before this Court reveals that the administrative record was misplaced before it reached the district court. It was located by the court during the proceeding. The following discussion occurred near the end of the hearing, after the administrative record was admitted as an exhibit and after the court revealed that he would affirm the Commissioner's order:

> The Court: The Court has read the briefs submitted by both counsel, has carefully considered the arguments of both counsel and the case law presented and has thoroughly considered the Insurance Code and the exhibits certainly

---

[10] In 1985 the legislature amended article 1.14-1 to add section 3(a), which gives "person" the meaning assigned by section 2(a) of article 21.21. *See* Tex. Ins. Code Ann. art. 21.21, § 2(a) (West Supp. 2001). Section 2(a) of article 21.21 includes a fraternal in its definition of a "person." *Id.*

that were attached, as well as the record, and the Court is of the opinion that the Commissioner's decision should be affirmed.

. . . .

[Roth's Counsel]: Your Honor, I just have one question. I believe you stated that you had reviewed the record. Is that possible under the circumstances?

The Court: No. In actuality, what I reviewed primarily were all the documents attached to the briefs.

[Roth's Counsel]: Okay. And so those documents that were referred to in the briefs, which are part of the record, were not reviewed?

The Court: No.

[Roth's Counsel]: Okay. Well, then that causes me a problem with the final judgment that was submitted by opposing counsel. It states, "The Court, having reviewed the briefs and the record and having considered the argument of counsel, finds there are no grounds." I don't believe that under the circumstances, the record not having been in the hands of the Court, that the part that says "and the record" should be part of this final judgment.

The Court: Very well. Absent any objection by opposing counsel, then why don't I take this matter under advisement and make sure that I have a thorough opportunity to digest those binders that had been misplaced . . . . Would that be okay?

[Counsel for the Commissioner]: That's fine, Your Honor.

The Court: Counsel?

[Roth's Counsel]: Yes.

The court's final judgment was signed three days later. Roth has failed to show that the district court abused his discretion. Roth presents no evidence that the district court did not review the record in the three days between the end of the court proceeding and the signing of the

11

judgment. The record reveals that the district court expressed an affirmative intention to review the record in those three days. We overrule Roth's fifth issue.

### Breadth of Relief

By his fourth issue, Roth contends that the Commissioner's order "provides unreasonably broad injunctive relief unwarranted by the circumstances." Roth draws our attention to a number of cases that involve the burdens placed on the seekers of equitable injunctive relief. *See Luccous v. J. C. Kinley Corp.*, 376 S.W.2d 336, 341 (Tex. 1964); *Hermann Hosp. v. Thu Nga Thi Tran*, 730 S.W.2d 56, 58 (Tex. App.—Houston [14th Dist.] 1987, no writ); *Frey v. DeCordova Bend Estates Owners Ass'n*, 632 S.W.2d 877, 881 (Tex. App.—Fort Worth 1982), *aff'd*, 647 S.W.2d 246 (Tex. 1983); *Burklund v. Hackett*, 575 S.W.2d 389, 392 (Tex. Civ. App.—Tyler 1978, no writ). Roth complains that injunctive relief is not appropriate (1) for past acts, (2) "to prevent an alleged threatened act," or (3) in the absence of "imminent harm or irreparable injury."

However, the Commissioner's authority to order Roth to cease and desist from the listed activities comes from the insurance code, and a statutory remedy is not governed by equitable principles. *See State v. Texas Pet Foods, Inc.*, 591 S.W.2d 800, 805 (Tex. 1979). Article 1.14-1 provides,

> If the Commissioner has reason to believe or it appears that any person . . . has violated or is threatening to violate this Article . . . , the Commissioner may set a hearing and shall serve on that person . . . a statement of charges and a notice of hearing . . . .
>
> . . . .

12

> . . . After the hearing, the Commissioner may issue an order against the person . . . charged with a violation requiring that the person . . . immediately cease and desist from the violation.

Act of May 27, 1989, 71st Leg., R.S., ch. 1025, § 2, 1989 Tex. Gen. Laws 4122, 4122-23 (Tex. Ins. Code Ann. art. 1.14-1, § 3A(a), (c), since repealed and codified at Tex. Ins. Code Ann. §§ 101.151, .153 (West Supp. 2001)).  The statute allows the Commissioner to issue a cease and desist order on the basis of past violations, and there is no requirement that the Commissioner find that a violation "probably will recur," as Roth urges. *See id.*  Finally, nothing in the statute requires a showing of harm. *See id.*  We overrule Roth's fourth issue.

## CONCLUSION

Having overruled Roth's issues, we affirm the judgment of the district court.

 

_____

Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices Kidd and Yeakel.

Affirmed

Filed:   June 7, 2001

Publish