Emory **GARTH** and **RTB Technology, Inc.,** Appellants,

v.

**STAKTEK CORPORATION, Carmen D. Burns,** and **Robert B. Campbell,** Appellees.

No. 3–93–560–CV.

Court of Appeals of Texas, Austin.

May 18, 1994.

Rehearing Overruled June 15, 1994.

Clarence Eriksen, Arnold, White & Durkee, Houston, for appellants.

R. James George, Jr., George, Donaldson & Ford, L.L.P., Austin, for appellees.

Before POWERS, KIDD and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

The opinion issued by this Court on April 6, 1994, is withdrawn, and the following is substituted in lieu thereof.

The question presented is whether a temporary injunction should be upheld against a corporation and an individual who would otherwise continue to make use of certain trade secrets obtained through a prior confidential relationship.

## BACKGROUND

In January 1990, Emory Garth, Carmen Burns, and Robert Campbell formed BCG Ventures to produce a three-dimensional high-density memory package for mini- and microcomputer application. On January 15, 1990, Burns and Garth signed a nondisclosure agreement covering information exchanged during that venture, excepting information that otherwise becomes "publicly available." The parties decided to dissolve their venture roughly three months later, after Burns had made some important breakthroughs in product design. In April 1990, all three venturers signed a letter of agreement that Burns would retain all rights to the intellectual property he created while working with BCG Ventures. Most importantly, Burns had developed a "radiator" design that enables heat to escape stacked integrated circuits, which the parties acknowledge to be "the key concept needed to make the initial product concept manufacturable."

In June 1990, Burns and Campbell formed Staktek Corporation to produce Burns's memory module. Garth joined RTB Technology, Inc. in 1991, and this company attempted to license a competing product using the radiator principle. To protect his design, Burns filed patent applications with the United States Patent Office and the World International Property Organization. On February 20, 1992, the *Gazette*, a publication of the World Intellectual Property Organization in Brussels, published an abstract of Burns's international patent application. In an October 1992 newspaper article, RTB Technology revealed some of its activities and announced its affiliation with Microelectronics and Computer Technology Corporation (MCC). In June 1993, another article provided additional information about RTB Technology's new product. In July 1993, Staktek Corporation, Burns, and Campbell ("Staktek") brought suit to enjoin RTB Technology and Garth ("RTB") from using or distributing Staktek's trade secrets. The trial court issued a temporary injunction from which RTB appeals.

In six points of error, RTB asserts that the trial court erred in granting injunctive relief because: (1) the trade secrets in question had been publicly disclosed in February 1992, after which others could freely use Staktek's confidential information; (2) RTB did not make commercial use of the trade secrets before Staktek's public disclosure; (3) the Supremacy Clause of the United States Constitution preempts Texas law from granting injunctive relief to protect patents under these circumstances; (4) prior restraint on free speech is unconstitutional; (5) Staktek has an adequate remedy at law; and (6) laches should bar this action because of Staktek's unreasonable delay in seeking injunctive relief. We will affirm the trial court's order.

## STANDARD OF REVIEW

■■■ A trial court's order granting a temporary injunction may be reversed only on a showing of a clear abuse of discretion. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex. 1978). To obtain a temporary injunction, the applicant need demonstrate only a probable injury and a probable right of recovery. *Transport Co. of Tex. v. Robertson Transports,* 152 Tex. 551, 261 S.W.2d 549, 552 (1953). Such a showing demonstrates a right to preserve the status quo. *Franklin Sav. Ass'n v. Reese,* 756 S.W.2d 14, 15 (Tex. App.—Austin 1988, no writ). An abuse of discretion occurs when the trial court arbitrarily or unreasonably finds a probable injury and a probable right of recovery. *Id.*

## DISCUSSION

### Public Disclosure of Trade Secrets

In its first point of error, RTB claims that on February 20, 1992, Staktek publicly disclosed its trade secrets, after which RTB was free to use this information. RTB further asserts, in its second point of error, that it did not make any commercial use of the trade secrets before this public disclosure. In its fifth point of error, RTB claims that injunctive relief after a public disclosure is inappropriate because its only liability to Staktek, if any, would be for monetary damages. .

■■■ The dispute centers on whether Staktek's trade secrets may be protected after public disclosure, whether the abstract published in Brussels was a public disclosure, and whether RTB commercially used Staktek's technology before this disclosure. We begin by examining RTB's actions before February 1992. By the time the *Gazette* published Staktek's patent application, RTB had completed the basic design for its competing device, consulted a patent attorney about protecting this design, and sought financing from investors for the development of this product. RTB claims that these activities do not constitute a commercial use because it had not commenced production or sales of a final product. We disagree. Any misappropriation of trade secrets, followed by an exercise of control and domination, is considered a commercial use. *University Computing Co. v. Lykes–Youngstown Corp.,* 504 F.2d 518, 542 (5th Cir.1974). The trial court held that using a trade secret to produce a design for which a patent application is then submitted is a commercial use. Additionally, commercial use encompasses using a product design to procure financing for development of that product. The trial judge was not unreasonable in determining that RTB had used Staktek's technology before February 1992. We overrule RTB's second point of error.

■ Injunctive relief may be proper to prevent a party that has appropriated another's trade secrets from gaining an unfair market advantage. To obtain injunctive relief, an applicant must show the following: (1) the existence of a wrongful act; (2) the existence of imminent harm; (3) the existence of irreparable injury; and (4) the absence of an adequate remedy at law. *Hues v. Warren Petroleum Co.,* 814 S.W.2d 526, 529 (Tex.App.—Houston [14th Dist.] 1991, writ denied). The trial court found that it was more probable than not that RTB had used Burns's trade secrets to develop its competing product. RTB submitted the plans for this product to its patent lawyers before the Brussels publication. RTB's "use" of trade secrets before such information was allegedly disclosed to the public is a wrongful act that makes imminent financial

harm from unfair competition clearly foreseeable. An irreparable injury exists when unfair competition deprives the initial producer of a fair opportunity to market its product. Lost opportunity to create or gain control of a new market may result in unquantifiable losses for which there is no adequate remedy at law. *See Hyde Corp. v. Huffines,* 314 S.W.2d 763, 773 (Tex.1958) ("An award of damages for patent infringement might well prove inadequate to fully protect the one whose confidence had been violated.").

■ But in cases involving trade secret violations, is injunctive relief proper after the confidential information has entered the public domain? In technological industries, the design stage and the start-up phase provide the creator of a new device a period in which to market the new product before potential competitors are able to copy the technology. By appropriating Staktek's confidential information before its publication, RTB was able to prepare to enter the market at the same time as Staktek, and thus could deprive Staktek of the competitive advantage offered by the normal developmental period. Additionally, a single industrial standard generally dominates the market for computer components. The trial court found that only one product is likely to survive, and that RTB's licensing a competing product with major manufacturers would probably destroy Staktek's opportunity to develop the standard and market its product. To provide any real protection in situations in which the competing company uses the creator's trade secrets to concurrently develop a similar product, injunctive relief beyond the date the company creating the technology publicizes its product is an appropriate remedy. *Hyde Corp.,* 314 S.W.2d at 773–74; *see also K & G Oil Tool & Serv. Co. v. G & G Fishing Tool Serv.,* 314 S.W.2d 782, 790–91 (Tex.1958).

In ruling on RTB's first point of error we do not decide whether the publication of the patent application in the *Gazette* was sufficient disclosure to permit other parties to make use of Staktek's technology after February 1992. Because the trial court determined that RTB had appropriated Staktek's trade secrets before that date, and because the court could have determined that impos-

ing injunctive relief beyond that date was the only way to protect Staktek from RTB's concurrent marketing of a similar product, we hold that the trial court did not err in granting continuing injunctive relief against RTB.

■ RTB claims that, regardless of its previous acts, it is entitled to use Staktek's technology after the *Gazette* publication by virtue of the nondisclosure agreement signed in January 1990. However, RTB's misappropriation of trade secrets before February 1992 permitted the trial court to grant injunctive relief despite the publication in Brussels and regardless of whether it was a public disclosure of confidential information. *Luccous,* 376 S.W.2d at 340 ("[A] person's wrongful acts may deprive him of the right which he would otherwise have had as a member of the public.") (citing *Hyde Corp. v. Huffines,* 158 Tex. 566, 314 S.W.2d 763 (1958)). We overrule RTB's first and fifth points of error.

### Prior Restraint on Expression

In its fourth point of error, RTB claims that the district court's injunction violates the United States and Texas Constitutions by ordering a prior restraint on expression. Texas operates under the "well-settled rule that injunctive relief may be employed when one breaches his confidential relationship in order to unfairly use a trade secret." *Luccous v. J.C. Kinley Co.,* 376 S.W.2d 336, 341 (Tex.1964). However, the application of this rule must still be constitutional. Because the free speech rights under the Texas Constitution, article I, section 8, are more extensive than the guarantees provided by the United States Constitution, we need only determine whether this form of prior restriction on free speech is permitted in Texas. *Davenport v. Garcia,* 834 S.W.2d 4, 8 (Tex.1992).

■ Texas law begins with the presumption that prior restraints on free speech are unconstitutional. *Davenport,* 834 S.W.2d at 9. However, prior restraints may be permitted to prevent an imminent and irreparable harm, so long as no less restrictive alternative form of protection is available. *Id.* at 10. In *Davenport,* the supreme court held that a gag order would be permitted if "imminent

and irreparable harm to the judicial process will deprive litigants of a just resolution of their dispute." *Id.* Similarly, injunctions against trade secret violations may be necessary to provide meaningful legal protection to the owners of intellectual property. Monetary compensation may not sufficiently protect the creator of a new product from unfair competition by those who improperly appropriate confidential information. *Hyde Corp.*, 314 S.W.2d at 773. In this case, the trial court reasonably found that RTB's improper use of confidential information might imminently and irreparably harm Staktek.

■■■■■■ Despite the existence of an imminent and irreparable harm, an injunction may be granted only when it is the least restrictive means of providing appropriate relief. When the court attempts to protect trade secrets, speech itself may cause the harm meant to be guarded against. Considering RTB's earlier attempts to sell the protected technology to other computer-parts manufacturers, there appears to be no less restrictive method of protecting Staktek than enjoining RTB from disseminating the technology or revealing to third parties the manner of design and manufacture of the device. Under these circumstances, the injunctive relief granted is not an unconstitutional prior restraint. We overrule RTB's fourth point of error.

### Federal Preemption

■■■■ In its third point of error, RTB claims that the Supremacy Clause of the United States Constitution preempts states from enjoining disclosures that are permitted under federal patent law: "[S]tate regulation of intellectual property must yield to the extent that it clashes with the balance struck by Congress in our patent laws." *Bonito Boats v. Thunder Craft Boats*, 489 U.S. 141, 152, 109 S.Ct. 971, 978, 103 L.Ed.2d 118 (1989). However, *Bonito Boats* expressly excepts state actions that do not directly interfere with federal patent law. *Id.* at 155, 109 S.Ct. at 979–80. The Court further determined that "state protection of trade secrets ... [does] not conflict with the federal patent law," because it advances "goals outside the contemplation of the federal patent scheme"

in a manner "not aimed exclusively at the promotion of the invention itself." *Id.* at 166, 109 S.Ct. at 985. Trade secret law is intended to prevent ideas from being directly stolen, rather than copied, and only applies to the small group of people privy to confidential information. *Id.* at 155, 109 S.Ct. at 979–80. The Texas Supreme Court has also distinguished trade secret law from patent law:

> If, as has been said in numerous cases, the equitable remedy of injunction to prevent one person from damaging another through an abuse of confidence in wrongfully appropriating trade secrets is a separate remedy and incident to a different right than that secured by a patent, it would seem that injunctive protection of the trade secret as against a licensee should not necessarily cease upon the issuance of a patent.

*Hyde Corp.*, 314 S.W.2d at 773.

RTB argues that, under *Luccous*, the state may not use trade secret law to prevent an invention from being copied by another manufacturer. In *Luccous*, however, the supreme court refused to grant relief because it found that no trade secret existed. *Luccous*, 376 S.W.2d at 340. In so doing, the court distinguished that case from *Hyde Corporation*, and reaffirmed the rule that "a person's wrongful acts may deprive him of the right which he would otherwise have had as a member of the public." *Id.* Because we find no conflict between federal patent law and state laws protecting trade secrets under these circumstances, we overrule RTB's third point of error.

### Unreasonable Delay

In its sixth point of error, RTB claims that this suit for injunction was barred by laches. However, Texas caselaw does not prevent injunctive relief merely because a potential plaintiff did not file a claim as quickly as possible. In a similar suit, the Texas Supreme Court allowed a case to be brought a year after a competitor began production using the first producer's trade secrets. *K & G Oil Tool & Serv. Co.*, 314 S.W.2d at 790–91.

> As a rule equity follows the law and generally in the absence of some element of estoppel or something akin thereto, the doctrine of laches will not bar a suit short of the period set forth in the limitation

statutes. Considering the past business relations between the parties and the lack of any positive action or deliberate nonaction on the part of petitioners which could reasonably be considered as having induced respondents to act to their disadvantage, there is no basis for a shortening of the limitation period, so to speak.

*Id.* at 791.

■ In the present case, Staktek filed this suit only nine months after learning that RTB might be using its trade secrets. In October 1992, two weeks after Staktek had learned that RTB was working on a competing product, Staktek's attorney wrote RTB Technology, MCC, and Garth to notify them of their possible trade secret infringement and of Staktek's pending patent. At the time, Staktek did not know if RTB's product used Burns's design, but it reserved its rights to take future legal action. A picture of RTB's product, published in June 1993, demonstrated RTB's use of Staktek's technology; Staktek filed this suit the following month.

RTB claims it was harmed when Staktek did not file suit as soon as it learned that RTB was producing a competing product. RTB continued to invest substantial sums over the next nine months, while Staktek refused to swap technologies. The evidence suggests that Staktek did not learn that RTB was actually using Staktek's design until June 1993. Additionally, although Staktek refused to discuss its technology with RTB, it repeatedly expressed its intention to enforce any infringement of its trade secrets. These letters should have spurred RTB to determine its possible liability for trade secret infringement before continuing production plans. Staktek did not induce RTB to act to its own disadvantage. We overrule RTB's sixth point of error.

## CONCLUSION

Concluding that the trial court did not abuse its discretion in granting the requested injunctive relief, we affirm the order.