Julie MARKEL, and J.L. &
Associates, Appellants,

v.

WORLD FLIGHT, INC., Appellee.

No. 04–95–00893–CV.

Court of Appeals of Texas,
San Antonio.

Aug. 21, 1996.

Jerry Ware, Gerald C. Conley, James M. McCown, Jackson & Walker, L.L.P., Dallas, for Appellant.

Michael R. Garatoni, Roger D. Kirstein, Kenneth L. Malone, Foster, Lewis, Langley, Gardner & Banack, Inc., San Antonio, for Appellee.

Before HARDBERGER, GREEN, and DUNCAN, JJ.

## OPINION

GREEN, Justice.

Appellants Julie Markel and J.L. & Associates bring this accelerated, interlocutory appeal from the trial court's October 27, 1995 "Order Imposing Sanctions Including the Granting of a Temporary Injunction." They raise ten points of error. For the following reasons, we dissolve the temporary injunction.

### BACKGROUND

*The beginning*

This accelerated, interlocutory appeal arises out of a business dispute between appellants Julie Markel, J.L. & Associates and appellee World Flight, Inc. (World). Appel-

lants are in the business of public relations. World alleges in its original petition that it is a "Texas non-profit organization founded to manage and oversee a historic expedition that will authentically re-create and complete Amelia Earhart's renown [sic] 1937 attempt to circumnavigate the globe."

On October 17, 1995, World filed an original petition, application for temporary restraining order (TRO), temporary injunction, and permanent injunction. According to World's petition, appellants and World had developed a business relationship based on managing and overseeing the recreation of Amelia Earhart's flight. World alleges that it terminated the relationship because Markel failed to accomplish unspecified goals and work. World also alleges that appellants "intimated to [World], both expressly and impliedly, that they may call other entities and/or people doing business with, or who may do business with, World Flight Inc. to discuss the problems between Plaintiff and Defendants and to discuss with such people and/or entities doing business with World Flight, Inc." According to the appellee, this could include "vendors, possible and/or committed sponsors" of the flight. Furthermore, this interference would likely cause "confusion, doubt and worry" and "would be costly and devastating to the entire project." Appellants claim they had no contract with World and that, in any event, World had no authority to terminate the business relationship. The flight is scheduled to take place in March of 1997, the sixtieth anniversary of the original flight.

On the same day World filed its original petition, the trial court granted an ex parte temporary restraining order and set a hearing on World's request for a temporary injunction for 9:00 a.m. on October 30, 1995. Shortly thereafter, World sought a fourteen-day extension of the temporary restraining order to allow it to conduct discovery in preparation for the injunction hearing. World also filed a "Motion to Shorten Time"

asking that the hearing on the motion to extend the TRO be moved up to October 24, 1995. The trial court granted this motion and, following a hearing, extended the restraining order and reset the hearing on the injunction to November 2, 1995.

*The deposition and the motion for sanctions*

On October 26 appellants arrived at the offices of World's counsel for Julie Markel's deposition. Markel's counsel began the deposition by insisting his client would not participate in the deposition or answer any questions until he received information concerning the agreement which formed the basis for an amended petition World had filed three days earlier.[1] At her counsel's urging, Markel refused to be sworn or answer any questions. When World's counsel refused to comply with this request to produce any agreement, appellants' counsel indicated he would be in San Antonio for the remainder of the day, and that he was prepared to begin the deposition as soon as the information was provided. World's counsel said he would pursue sanctions, and the parties adjourned the deposition without reaching an agreement.

That afternoon World filed a motion for sanctions. The motion asked the court to strike the appellants' pleadings, grant World's request for a temporary injunction, or render a default judgment. At the same time, World also filed a "Motion to Shorten Time" which asked that in view of the pending November 2, 1995 temporary injunction hearing, the motion for sanctions should be heard the next day, October 27, at 9:00 a.m. The presiding judge granted this motion.

*The hearing and the court's order*

The motion for sanctions was heard on the morning of October 27, 1995. Appellants' counsel, Jerry Ware, was not present. During the hearing, World's counsel claimed that his opponent's behavior during the deposition was inconsistent with his previous assurances

---

1. On October 23, 1995 World filed a first amended original petition, application for temporary restraining order, temporary injunction, and permanent injunction. The amended pleading was nearly identical to the original petition except it added a paragraph alleging that World had sustained unspecified damages based on appellants' alleged breach of an unspecified agreement to perform unspecified work and services in connection with the flight. The new pleadings sought the same restraining order and injunctive relief.

to the court that he would cooperate with the taking of depositions.[2] The only evidence offered by World were the allegations in its pleadings, a transcript of the aborted October 26 deposition, a transcript of the hearing on World's motion to extend the temporary restraining order, and invoices from two court reporters—one for the deposition and another for the hearing. The record contains no testimony or any other type of evidence to support allegations of irreparable harm or inadequate remedy at law. At the conclusion of the hearing, the trial judge granted the motion for sanctions and the temporary injunction.

The court's "Order Imposing Sanctions Including the Granting of a Temporary Injunction" imposes an injunction which prohibits Julie Markel or J.L. & Associates from "communicating directly or indirectly" with a list of over 100 individuals and businesses, most of them aviation-related. The order further prohibits appellants from "communicating directly or indirectly" "with any other person and/or entity that may or is doing business of any kind with WORLD FLIGHT, INC., in any form or fashion regarding WORLD FLIGHT, INC., and any aspect of the business or purpose of WORLD FLIGHT, INC. from the date of entry of this order until judgment in this cause is entered by the Court." The court's order also sets the trial on the merits for January 27, 1997; requires Julie Markel and J.L. & Associates to pay to World Flight $2,500 reasonable attorneys' fees; and, "as an additional sanction for Defendants' failure to comply with reasonable discovery requests," denies the appellants' amended motion to transfer venue.[3]

*The motion for reconsideration*

On November 14, 1995 appellants filed a motion for reconsideration. The motion claimed, among other things, that appellants had never received notice of World's motion for sanctions, or of the expedited hearing on

the motion. The court's order states that appellants received notice and failed to appear. The certificates of service on the motions for sanctions and to shorten time state that appellants' counsel was served with true and correct copies by hand-delivery at the Menger Hotel on October 26.

Appellants' counsel testified at the hearing on the motion for reconsideration, that at the conclusion of the deposition on the morning of October 26, he told World's counsel he would be staying at the Menger Hotel.[4] Ware said he received no packages or phone calls there. World responded that in addition to hand-delivering the documents to the hotel's front desk via a local courier service, they attempted to serve him by faxing copies of the motion for sanctions, the motion to shorten time, and the order granting the motion to shorten time to Ware's Dallas office at 4:13 p.m. on October 26. Both the receipt from the courier service and the fax/telecopy coversheet were admitted at the hearing. But, appellants' counsel also testified that he does not have a secretary. Thus, he claims he did not learn of the motion for sanctions or the hearing until he returned to his Dallas office on the afternoon of Friday, October 27. By this time, however, the court had already signed the "Order Imposing Sanctions Including The Granting of a Temporary Injunction."

### ISSUES

Appellants raise ten points of error. The first point claims the trial court's order is an unconstitutional prior restraint. The remaining points claim the trial court's order: (2) was granted without proper notice and hearing; (3) is based on speculation and inadequate evidence; (4) does not comply with the requirements of rule 683 of the Texas Rules of Civil Procedure; (5) was not based on any right of the appellee; (6) awards sanctions

---

2. One of the issues discussed during the October 24 hearing was the need to depose the parties. During the hearing, appellants' counsel agreed his clients would be available for depositions on Thursday October 26 and Friday October 27.

3. Appellants' motion to transfer venue was filed on October 24. The motion claimed that both

Julie Markel and J.L. Associates were residents and domiciliaries of Dallas County.

4. Although it is clear that during the deposition Ware said that he would be at the Menger Hotel, appellants claim this does not mean the hotel became his agent for purposes of service of process.

against appellants based solely on the conduct of appellants' counsel, and is excessive; (7) is erroneous because venue was proper only in Dallas County; (8) grants all of the relief sought by World; (9) destroys rather than preserves the status quo; and (10) fails to consider the imposition of lesser sanctions. It is appellant's first point which we address here.

### DISCUSSION

#### Jurisdiction

■ The threshold question raised by World is whether we have jurisdiction to review the trial judge's order. Although the order is identified as an "Order Imposing Sanctions Including the Granting of a Temporary Injunction," it is actually an amalgam of three different rulings—the granting of a temporary injunction, the denial of appellants' amended motion to transfer venue, and an order imposing $2,500 in monetary sanctions. Of these items, however, only the first is reviewable by interlocutory appeal. There is no appeal from an interlocutory venue determination. *See* TEX.CIV.PRAC. & REM. CODE ANN. § 15.064(a) (Vernon 1986); *see also* TEX.R.CIV.P. 87(6). Nor are orders which impose discovery sanctions reviewable by interlocutory appeal. *See Velez v. De-Lara*, 905 S.W.2d 43, 45 (Tex.App.—San Antonio 1995, no writ) (Discovery sanctions cannot be the subject of an interlocutory appeal).

■ The problem is that "courts of appeals have no jurisdiction to hear appeals from interlocutory orders, unless specifically authorized by statute." *Eichelberger v. Hayton*, 814 S.W.2d 179, 182 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *see also New York Underwriters Ins. Co. v. Sanchez*, 799 S.W.2d 677, 679 (Tex.1990); *Henderson v. Shell Oil Co.*, 143 Tex. 142, 182 S.W.2d 994, 995 (1944). Section 51.014 of the civil practice and remedies code authorizes an interlocutory appeal in only six instances: (1) appointment of a receiver or a trustee; (2) overruling a motion to vacate an order that

appoints a receiver or a trustee; (3) certification or refusal to certify a class; (4) granting or refusing to grant a temporary injunction; (5) denial of a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state, or a political subdivision of the state; and (6) denial of a motion for summary judgment based in whole or in part on a claim or defense by a member of the electronic or print media. TEX.CIV.PRAC. & REM.CODE ANN. § 51.014 (Vernon 1996).

■ Injunctive orders, though, are reviewable by interlocutory appeal. In fact, we may review the portion of an order which is appealable and refuse to consider the portion which is non-appealable. If a portion of an order is injunctive, then that part is reviewable, even though a portion of the order may be interlocutory and unappealable. *Eichelberger*, 814 S.W.2d at 182; *Prodeco Exploration, Inc. v. Ware*, 684 S.W.2d 199, 201 (Tex. App.—Houston [1st Dist.] 1984, no writ); *Wood v. Wood*, 585 S.W.2d 761, 762 (Tex.Civ. App.—Houston [1st Dist.] 1979, writ dism'd). For purposes of an appeal, the classification of an order as a temporary injunction is controlled by the character and the function of the order, not by its form. *See Del Valle Indep. School Dist. v. Lopez*, 845 S.W.2d 808, 809–810 (Tex.1992). Moreover, if the substance of a decree amounts to a final judgment, incidental language labeling portions thereof temporary is not controlling. *Brines v. McIlhaney*, 596 S.W.2d 519, 524 (Tex. 1980). A trial court cannot defeat an interlocutory appeal merely by the label it attaches to the interlocutory order; it is the substance of the order which determines whether it is appealable. *De Los Santos v. Occidental Chemical Corp.*, 925 S.W.2d 62 (Tex.App.—Corpus Christi, 1996). This case is no different. Looking to the substance of the trial court's order, we therefore conclude that we have jurisdiction to hear an appeal from the trial judge's order only insofar as the order grants injunctive relief.[5] We now turn to appellants' points of error.

---

5. We also note this is not the first time appellants have been before our court. On November 2, 1995 they filed a petition for writ of mandamus from the order they now challenge by accelerat-

ed, interlocutory appeal. We denied leave to file on November 9, 1995. Review was sought in the Texas Supreme Court, but the court overruled the motion for leave to file on November 13,

*Prior Restraint*

■ Appellant's first point claims the trial court's order is an unconstitutional prior restraint against free expression under the Texas Supreme Court's analysis in *Davenport v. Garcia*, 834 S.W.2d 4 (Tex.1992). In *Davenport*, the court announced that restrictions on free expression must be targeted at the effect of the expression rather than at the expression itself. The court promulgated the following test for gag orders in civil judicial proceedings: the trial court must make specific findings supported by evidence that (1) an imminent and irreparable harm to the judicial process will deprive the litigants of a just resolution of their dispute, and (2) the judicial action represents the least restrictive means to prevent that harm. *Id.* at 10. *See also Ex parte Tucci*, 859 S.W.2d 1, 5–6 (Tex.1993).

■ That same standard applies in this case. Beginning with the first part of the test, imminent and irreparable harm, we note that

[f]reedom of expression may not be restricted solely on grounds that its exercise will have the effect of producing imminent and irreparable harm. Restraints may be imposed only if the injunctive relief granted encompasses the least restrictive means of protecting against the alleged harmful effect. In resolving both whether the alleged effect was imminent and irreparable and whether the temporary injunctive relief granted here was the least restrictive means to prevent that harm, we look to the injury asserted, the relief requested, and the underlying evidence.

*Tucci*, 859 S.W.2d at 6.

■ In this case, however, the trial court heard no testimony of any kind before granting injunctive relief. Indeed, the only evidence World offered the trial court—apart from the transcripts of the October 26 deposition, the hearing on World's motion to extend the temporary restraining order, and the invoices from two court reporters—were

the following allegations in its original and first amended petition:

In conversations with Defendants, both before and after the termination of the business relationship, Defendants *intimated*, both expressly and impliedly, that they *may* call other entities and/or people doing business with or who *may* do business with World Flight, Inc. to discuss the problems between Plaintiff and Defendants and to discuss with such people and/or entities doing business with World Flight, Inc. Some of these people and/or entities are vendors, *possible* sponsors and/or committed sponsors of this historic recreation and Defendants' interference in the business of World Flight, Inc. will *likely* cause confusion, doubt and worry amongst the people and/or entities and *may result* in these people and/or entities decision not to sponsor this event and/or become involved in this event. World Flight, Inc. is a non-profit organization which is significantly relying on sponsorship and donations for its success. This interference by Defendants would be costly and devastating to the entire project and will cause irreparable harm to the project.

(Emphasis added). The record contains absolutely no testimony or any other type of evidence to support allegations of imminent and irreparable harm. Pleadings alone will not support the entry of a temporary injunction. *Millwrights Local Union No. 2484 v. Rust Engineering Co.*, 433 S.W.2d 683 (Tex. 1968). This is particularly true where the petition requesting injunctive relief fails to plead detailed facts about the alleged harm; general or conclusory allegations are insufficient to serve as a basis for injunctive relief. *Otten v. Town of China Grove*, 660 S.W.2d 565, 569 (Tex.App.—San Antonio 1983, writ dism'd).

■ While the trial court considered no testimony before granting injunctive relief, even if there had been testimony consistent with World's pleadings, it would not have entitled World to injunctive relief. This is because "testimony of 'fear,' 'apprehension'

1995, with the following notation: "*See* Tex.Civ. Prac. & Rem.Code § 51.014(4)." 39 Tex.Sup.Ct.J. 99. As we have already noted, § 51.014(4) provides for interlocutory appeals from orders which grant or refuse a temporary injunction.

and 'possibilities' is not sufficient to establish any injury, let alone 'irreparable' injury." *Mother and Unborn Baby Care of North Texas, Inc. v. Doe*, 689 S.W.2d 336, 338 (Tex. App.—Fort Worth 1985, writ dism'd). Moreover, "an injunction will not lie to prevent an alleged threatened act, the commission of which is speculative and the injury from which is purely conjectural." *Id.* "[A] trial court abuses its discretion in granting a temporary injunction unless it is clearly established by the facts that one seeking such relief is threatened with an actual irreparable injury if the injunction is not granted." *Id.* (citing *Dallas General Drivers v. Wamix, Inc.*, 156 Tex. 408, 295 S.W.2d 873, 879 (1956)). World has clearly failed to meet this burden.

■ Turning to the second element of *Davenport*, we note that the apparent justification for the trial court's order is World's fear that if appellants say something about the dispute or the relationship between appellants and World, or even about the pending litigation, those to whom such speech is directed might do something or say something that could possibly have a negative effect on World. Interestingly, however, the trial court's order is directed to all communication with over 100 specific individuals and companies—not just false, defamatory, wrongful, or damaging communication. The supreme court has made clear that even defamation or other irreparable harm is not a sufficient reason for restraining an individual's right to speak freely. *See Hajek v. Bill Mowbray Motors, Inc.*, 647 S.W.2d 253, 254 (Tex.1983).

World tries to justify the temporary injunction by invoking the law of confidential relationships and prior restraints. It cites *Garth v. Staktek Corp.*, 876 S.W.2d 545 (Tex. App.—Austin 1994, writ dism'd w.o.j.), where the court of appeals relied on what it called the "well settled rule that injunctive relief may be employed when one breaches his confidential relationship in order to unfairly use a trade secret." *Id.* at 549 (quoting *Luccous v. J.C. Kinley Co.*, 376 S.W.2d 336, 341 (Tex.1964)). Far from supporting World's position, however, *Garth* and the other cases it cites only reinforce our conclu-

sion that the temporary injunction must be dissolved.

■ To begin with, the *Garth* court recognized that prior restraints on free expression are presumptively unconstitutional. *Id.* The court also recognized the rule, more clearly articulated by the Texas Supreme Court in *Ex parte Tucci*, that prior restraints may not issue solely because a party will otherwise face imminent and irreparable harm. *Id. See also Ex parte Tucci*, 859 S.W.2d at 6. Rather, an aggrieved party must also show there are no other less restrictive forms of protection available. *Id.* Applying this analysis, the court noted that the defendant in *Garth* had in fact attempted to sell the protected technology to the plaintiff's competitors. *Id.* at 550. The court concluded there were no less restrictive methods for protecting the plaintiff's trade secrets other "than enjoining [the defendant] from disseminating the technology or revealing to third parties the manner of design and manufacture of the device." *Id.*

In this case, by contrast, the evidence reveals neither a trade secret nor a confidential relationship of any kind. World's pleadings allege no contractual, common law, or statutory duty that would justify the sweeping restraint on free expression which was imposed by the trial court. Moreover, the *Garth* court's description of the injunctive relief is itself instructive because of the narrow focus on the alleged harm. The court noted that in order to obtain injunctive relief, an applicant must show the existence of a wrongful act and the existence of imminent harm. *Id.* at 548. In this case, however, World has not even alleged the existence of a wrongful act or imminent harm, nor did the trial court consider any evidence that would support these elements. In short, World's reliance on *Garth* is simply unpersuasive.

The same can be said for *Henderson v. KRTS, Inc.*, 822 S.W.2d 769 (Tex.App.—Houston [1st Dist.] 1992, no writ), another case cited by World. *Henderson* involved a contractual undertaking by the defendant, a seller of a radio station, to assist the plaintiff, the buyer, in obtaining a Federal Communications Commission (FCC) permit to relocate its transmitter to Alvin, Texas. Instead of

assisting, however, the evidence showed that the defendant hindered the move by filing objections with the FCC. Stressing the plaintiff was only trying to enforce a specific contractual undertaking, the appellate court affirmed the trial court's temporary injunction which prohibited the defendant from filing objections with the FCC. *Id.* at 775–76.

World's reliance on *Transcontinental Gas Pipe Line Corp. v. American Nat'l. Petroleum Co.*, 763 S.W.2d 809 (Tex.App.—Texarkana 1988), *rev'd on other grounds*, 798 S.W.2d 274 (Tex.1990), is equally unpersuasive. The case did not involve a prior restraint on free expression. Instead, the issue in that tortious interference case involved an injunction which restrained the appellant "from interfering with" a list of specifically identified contractual relationships and companies.

Once again, however, it is the existence of a specific contractual undertaking and a narrowly tailored injunction which distinguish *Transcontinental Gas Pipe Line* and *Henderson* from the injunction in the present case. It is worth remembering that appellants are not merely enjoined from tortiously interfering with any contract or prospective contractual right of World, nor are they merely enjoined from violating a contractual obligation or uttering false information about World. Instead, they are enjoined from any communication whatsoever with over 100 specific individuals, businesses and the news media about the recreation of Amelia Earhart's flight. There is no explanation, either in the trial court's order or the record, as to how a discussion of the flight could in some way result in irreparable harm to World. Nor is there any indication as to how a conversation with any one or more of the named individuals or companies would lead to irreparable harm. Such an order cannot withstand any degree of scrutiny, let alone the analysis we must apply to prior restraints on free expression.

*Conclusion*

Appellants' freedom of expression has been restricted without evidence that its exercise will have the effect of producing any harm, let alone imminent and irreparable harm.

Moreover, the injunctive relief granted is so broad it arguably constitutes the most restrictive means to prevent any alleged harm, short of enjoining appellants from speaking to anyone on any subject. In short, World has neither alleged nor offered proof of any threatened conduct or imminent harm that would conceivably justify the imposition of such a harsh prior restraint on free expression. For these reasons, we sustain appellants' first point of error. However, we lack jurisdiction to review those portions of the trial court's order which deny appellants' amended motion to transfer venue and impose monetary sanctions; those issues are beyond the scope of this interlocutory appeal. We therefore dissolve the temporary injunction and dismiss the appeal from the remainder of the trial court's order, for want of jurisdiction. We do not address appellants' remaining points of error.