NUMBER 13-00-679-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


HARBOR PERFUSION, INC.
, Appellant,


v.



DONALD G. FLOYD
, Appellee.

___________________________________________________________________


On appeal from the 214th District Court


of Nueces County, Texas.


___________________________________________________________________


O P I N I O N



Before Chief Justice Valdez and Justices Dorsey and

Rodriguez

Opinion by Justice Rodriguez



 This is an accelerated, interlocutory appeal from a temporary
injunction prohibiting Harbor Perfusion, Inc., (Harbor) from enforcing a
covenant not to compete against Donald G. Floyd. See Tex. Civ. Prac.
& Rem. Code Ann. § 51.014(a) (4) (Vernon Supp. 2001); Tex. R. App. P.
28.1. Harbor challenges the temporary injunction by four issues. We
reverse and remand.

 Floyd is a cardiopulmonary clinical perfusionist, which is a person
who operates heart and lung machines as well as autotransfusion
devices during surgery. In 1985, Floyd and two other perfusionists
formed a partnership under the name Harbor Perfusion, Inc. Floyd was
a shareholder, director, officer, and employee of Harbor. At the time of
Harbor's incorporation, Floyd and Harbor entered into an employment
agreement which provided, among other things, that Harbor was
entitled to acquire Floyd's stock in Harbor upon his termination of
employment. The agreement also included a covenant not to compete,
which arose "in the event of (and in connection with) any optional
purchase of Employee's stock. . . ." In the event of such a purchase, the
covenant provided that the employee shall not, for a period of three
years after termination:

 in any area within a 50-mile radius of Corpus
Christi, Texas or of San Antonio, Texas, either: (i)
engage in the Company's Services businesses, or
individually render services as a perfusionist; (ii)
become beneficially interest[ed] in any business
or entity engaging in the Company's Services
business; (iii) become employed or retained by
any third party with respect to any Company's
Services operations; or (iv) be or become an
officer or director of any company engaging in a
Company's Services business. 


 The employment agreement further provided for payment of a
"termination benefit" upon termination of employment. The payments
were to continue for a period of three years after employment provided
Floyd did not violate the covenant not to compete. 

 Floyd resigned from Harbor's employment in April of 2000. 
Thereafter, Floyd filed suit against Harbor, seeking, inter alia, to enjoin
Harbor from enforcing the covenant not to compete and a judgment
declaring the covenant unenforceable. Harbor counterclaimed,
requesting a permanent injunction enforcing the covenant not to
compete. After a hearing, the court granted a temporary injunction
enjoining Harbor from the following conduct:

 [(1)] enforcing by judicial means, other than a trial
on the merits in the above styled and numbered
cause, the restrictive covenants contained in
paragraphs 7 and 8 of that certain Employment
Agreement dated May 10, 1996;


 (2) interfering extrajudicially with the performance
of perfusion services by Donald G. Floyd, either
individually or in the course and scope of his
employment for a third party, including Floyd's
solicitation of business from any client whom
Floyd served while affiliated with Harbor
Perfusion; and


 (3) committing any acts calculated to cause
damage to Donald G. Floyd in his performance of
perfusion services or any business connected
with those perfusion services.

 

 In its order, the trial court found that Harbor was likely to attempt
to enforce the covenant not to compete and interfere with Floyd's
performance of his occupation, that Floyd would likely succeed on the
merits in his suit, and that Floyd would suffer probable harm. 

 By its first, third, and fourth issues Harbor contends that the trial
court abused its discretion in granting the temporary injunction. 

 The standard of review for the grant or denial of a temporary
injunction is abuse of discretion. Walling v. Metcalfe, 863 S.W.2d 56,
58 (Tex.1993); Tenet Health Ltd. v. Zamora, 13 S.W.3d 464, 468 (Tex.
App.--Corpus Christi 2000, pet dism'd w.o.j.). A trial court abuses its
discretion when it acts arbitrarily and unreasonably, without reference
to guiding rules or principals, or misapplies the law to the established
facts of the case. Downer v. Aquamarine Operators, Inc., 701 S.W.2d
238, 241-42 (Tex. 1985). There is no abuse of discretion where the
court bases its decision on conflicting evidence. General Tire, Inc. v.
Kepple, 970 S.W.2d 520, 526 (Tex. 1998); Zamora, 13 S.W.3d at 468. 
We do not give any particular deference to legal conclusions of the trial
court and apply a de novo standard of review when the issue turns on
a pure question of law. Zamora, 13 S.W.3d at 468; see also State v.
Heal, 917 S.W.2d 6, 9 (Tex. 1996). 

 To be entitled to a temporary injunction, a plaintiff must show (1)
that a wrongful act occurred (i.e., that the plaintiff has a cause of action
against the defendant); (2) a probable right of recovery; and (3) a
probable injury in the interim. Walling v. Metcalfe, 863 S.W.2d 56, 57
(Tex. 1993); Zamora, 13 S.W.3d at 468; Castaneda v. Gonzalez, 985
S.W.2d 500, 502 (Tex. App.--Corpus Christi 1998, no pet.). The
probable injury element requires a showing that the harm is imminent,
the injury would be irreparable, and that the plaintiff has no other
adequate legal remedy. Zamora, 13 S.W.3d at 468. 

 Although an injunction is a preventive device, injunctive relief is
improper where the party seeking the injunction has mere fear or
apprehension of the possibility of injury. Frey v. DeCordova Bend
Estates Owners Ass'n, 647 S.W.2d 246, 248 (Tex. 1983). A
prerequisite for injunctive relief is actual injury, the threat of imminent
harm, or another's demonstrable intent to do that for which injunctive
relief is sought. Tri-State Pipe and Equipment, Inc. v. Southern County
Mut. Ins. Co., 8 S.W.3d 394, 401 (Tex. App.­Texarkana 1999, no pet).

 During the hearing on the temporary injunction, counsel for Harbor
questioned Floyd regarding how Harbor had interfered with the
performance of his occupation. Floyd responded he did not have any
contracts and that Harbor dominated the contracts. Moreover, "[o]ne
of their board members informed [him] that they will aggressively
defend their business in Corpus Christi. . . ." He also stated, "[w]ithout
specifics, I think there's some implied ­ some implications from the
past, that Harbor . . . has previously sued employees, former
employees, for competing." 

 Floyd admitted he was trying to maintain relationships with the
doctors for whom he had performed services and that he would be
available if they would like him to come back and work. Some of the
doctors had told him they wanted him to come back to work, but he
declined to do so because he was "concerned about the [covenant not
to compete] and the employment agreement." Floyd stated he was also
unable to write contracts under the covenant not to compete because
"[t]he contracts usually in the hospital prevent them from hiring a
former employee." Floyd had not offered his services to any physicians
who refused his offers. Some of the individuals with whom Floyd
spoke at the various hospitals indicated they had concerns that he was
under a covenant not to compete. When asked if Harbor did anything
to interfere with his discussions at Spohn Hospital, Floyd stated that to
his knowledge, Harbor did not. 

 Although a trial court does not abuse its discretion when it bases
its decision on conflicting evidence, that evidence must reasonably
support the trial court's decision. See Universal Health Services v.
Thompson, 24 S.W.3d 570, 576 (Tex. App.­Austin 2000, no pet. h.);
Zamora, 13 S.W.3d at 468. Floyd's testimony demonstrates mere fear
or apprehension of the possibility of injury rather than imminent harm. 
Floyd presented no evidence that Harbor interfered with the
performance of Floyd's occupation or that it intended to do so.(1) See
Markel v. World Flight, Inc., 938 S.W.2d 74, 79 (Tex. App.--San Antonio
1996, no writ) (holding that pleadings alone will not support entry of a
temporary injunction where record contains absolutely no testimony or
any type of evidence to prove imminent or irreparable harm). Moreover,
Harbor's mere filing of a counter-claim for a permanent injunction
seeking to enforce the covenant not to compete after a trial on the
merits does not amount to imminent harm. Accordingly, Floyd failed to
establish the probable injury element and the trial court abused its
discretion in granting the temporary injunction. 

 Even if Floyd had met his burden by showing imminent harm, the
trial court abused its discretion in entering the portion of the injunction
proscribing Harbor from enforcing the covenant by judicial means. This
portion of the injunction is an anti-suit injunction, which is appropriate
in four instances: 1) to address a threat to the court's jurisdiction; 2) to
prevent the evasion of important public policy; 3) to prevent a
multiplicity of suits; or 4) to protect a party from vexatious or harassing
litigation. Golden Rules Ins. Co. v. Harper, 925 S.W.2d 649, 651 (Tex.
1996). The party seeking the injunction has the burden of showing that
a clear equity demands the injunction. Christensen v. Integrity Ins. Co.,
719 S.W.2d 161, 163 (Tex. 1986); Tri-State Pipe and Equipment, Inc.
v. Southern County Mut. Ins. Co., 8 S.W.3d 394, 401(Tex.
App.­Texarkana 1999, no pet.). 

 In the present case, Floyd failed to provide evidence to support any
of the four bases for an anti-suit injunction. Accordingly, even if the
requisite elements of a temporary injunction had been satisfied, the trial
court abused its discretion by enjoining Harbor from enforcing the
covenant by judicial means, other than a trial on the merits in the
instant cause. 

 Furthermore, the portion of the order enjoining Harbor from extra-judicial activity is over broad. "[A] trial court abuses its discretion by
entering an 'overly-broad' injunction which grants 'more relief' than a
plaintiff is entitled to by enjoining a defendant from conducting lawful
activities or from exercising legal rights." Fairfield Estates L.P. v. Griffin,
986 S.W.2d 719, 723 (Tex. App.­Eastland 1999, no pet.) (citing The
Republican Party of Texas v. Dietz, 940 S.W.2d 86, 93 (Tex. 1997);
Villalobos v. Holguin, 146 Tex. 474, 208 S.W.2d 874, 875 (Tex. 1948);
Ghidoni v. Stone Oak, Inc., 966 S.W.2d 573, 583 (Tex. App.­San
Antonio 1998, no writ)). 

 Here, the trial court's order enjoined Harbor from interfering with
Floyd's performance of perfusion services, "including Floyd's solicitation
of business from any client whom Floyd served while affiliated with
Harbor." It further enjoined Harbor from "committing any acts
calculated to cause damage to Donald G. Floyd in his performance of
perfusion services or any business connected with those perfusion
services." These prohibitions go beyond preventing Harbor from
enforcing the covenant not to compete. By prohibiting Harbor from
committing an act calculated to damage Floyd's business as a
perfusionist or from interfering with Floyd's performance of perfusion
services, the injunction arguably restricts Harbor from engaging in free-market competition. Thus, even if Floyd had been entitled to a
temporary injunction, the trial court abused its discretion by entering
the overly-broad injunction. 

 Moreover, where the injunctive relief granted exceeds the relief
requested by the applicant in the petition, the trial court exceeds its
jurisdiction. RP&R, Inc. v. Territo, 32 S.W.3d 396, 401 (Tex. App.--Houston [14th Dist.] 2000, no pet.) (citing Fairfield v. Stonehenge Ass'n
Co., 678 S.W.2d 608, 611 (Tex. App.--Houston [14th Dist.] 1984, no
writ)). In this case, Floyd's petition for temporary injunction requested
only that Harbor be enjoined from enforcing the covenant not to
compete. Thus, the trial court exceeded its jurisdiction by entering any
relief beyond enjoining Harbor from enforcing the covenant not to
compete. Harbor's first, third, and fourth issues are sustained. We
decline to address Harbor's second issue as it is not dispositive to this
appeal. Tex. R. App. P. 47.1.

 The trial court's temporary injunction order is REVERSED, and the
cause is REMANDED to the trial court for further proceedings consistent
with this opinion.

 

 NELDA V. RODRIGUEZ

 Justice


Publish
.

Tex. R. App. P. 47.3.


Opinion delivered and filed

this 29th day of March, 2001.

 

1. In the appendix to his appellate brief, Floyd attached a letter from
Harbor's counsel to Floyd's counsel explaining that because Floyd had
violated the covenant not to compete, Harbor would not pay further
termination benefits. We are unable to consider this letter, however, as
it does not appear in the appellate record. See Sabine Offshore Serv.,
Inc. v. City of Port Arthur, 595 S.W.2d 840, 841 (Tex. 1979); Sewell v.
Adams, 854 S.W.2d 257, 259 (Tex.App.--Houston [14th Dist.] 1993, no
writ).