Texas Mutual Ins. Co. v. Surety Bank

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-233-CV

TEXAS MUTUAL INSURANCE COMPANY APPELLANT

V.

SURETY BANK, N.A. INDIVIDUALLY AND APPELLEE

D/B/A SURETY PREMIUM FINANCE

------------

FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------
 

I.  Introduction

In this accelerated, interlocutory appeal, Appellant Texas Mutual Insurance Company (“Texas Mutual”) challenges a single provision in a temporary injunction obtained by Appellee Surety Bank, N.A., individually and doing business as Surety Premium Finance (“Surety Bank”).  Texas Mutual claims that the challenged temporary injunction provision constitutes a prior restraint on speech that is unconstitutional under article one, section eight of the Texas Constitution and under the First Amendment of the United States Constitution.  
See 
Tex. Const.
 art. I § 8; 
U.S. Const
 amend. I.  Because we hold that the challenged provision is unconstitutional, we will modify the trial court’s temporary injunction to delete it; as modified, we will affirm the temporary injunction.

II.  Factual and Procedural Background

Texas Mutual is an insurance company that issues workers’ compensation insurance policies to employers.  Surety Bank provides financing for insurance policies, including workers’ compensation insurance. 

As a result of a dispute concerning whether Texas Mutual was required to refund unearned premiums Surety Bank had paid to Texas Mutual on behalf of a particular company, Surety Bank sued Texas Mutual.  Because of this litigation, Texas Mutual decided to cease doing business with Surety Bank.  In accordance with this decision, Texas Mutual notified insurance agents in Texas by a faxed letter that Texas Mutual would no longer accept Surety Bank premium finance agreements.
(footnote: 1)  Surety Bank then filed the present lawsuit against Texas Mutual, alleging tortious interference with prospective business relationships and business disparagement. 

In connection with its lawsuit, Surety Bank sought a temporary injunction. Following an evidentiary hearing, the trial court entered a June 25, 2004 temporary injunction enjoining Texas Mutual from  “(1) refusing to issue insurance or canceling insurance due to the purchasers’ financing the premiums in part or in whole through Surety [Bank]; (2) discouraging the financing of the purchase of insurance through Surety [Bank]; or (3) defaming Surety [Bank] in any way.”  Texas Mutual moved to modify the temporary injunction, arguing that provisions two and three of the injunction, which prohibited Texas Mutual from “discouraging” Surety Bank financing and from “defaming Surety [Bank] in any way,” were vague, unconstitutional, and should be removed from the temporary injunction.  The trial court granted Texas Mutual’s motion to modify the injunction to the extent that it modified the temporary injunction to delete provision two and to alter provision three as set forth below and to renumber it to become provision two:

Defendant Texas Mutual Insurance Company, its officers, agents, and employees are enjoined from . . . (2) Communicating or implying to any insurance agent or broker or any business known to be a customer or potential customer of Surety, or an entity or individual who utilizes Surety’s financial services or such services of other financial companies or recommends such services to others (including all employees and agents of all of the foregoing businesses or individuals)
 
that Surety is in some sort of financial trouble or that Surety has committed a misfeasance or malfeasance or was somehow unfit or unable to finance insurance premiums.
(footnote: 2)

Texas Mutual perfected this interlocutory appeal challenging the constitutionality of this modified provision.

III.  Constitutionality of Temporary Injunction’s Second Provision

Texas Mutual argues that the temporary injunction’s second provision is unconstitutional as a prior restraint on speech.  Surety Bank does not dispute that the temporary injunction does prospectively enjoin speech, but contends that the enjoined speech is private, commercial speech subject to a lower level of constitutional protection.
(footnote: 3)  Because Texas Mutual does not challenge provision one of the temporary injunction and because Surety Bank does not dispute that modified provision two of the temporary injunction constitutes a prior restraint on speech, we accept the trial court’s unchallenged findings of fact that Surety Bank satisfied the elements necessary to obtain a temporary injunction.  
See Butnaru v. Ford Motor Co.,
 84 S.W.3d 198, 204 (Tex. 2002) (recognizing litigant must plead and prove three specific elements to obtain a temporary injunction:  (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim).
  Therefore, we address whether the prior restraint on speech set forth in provision two of the temporary injunction is unconstitutional in light of the facts supporting issuance of the injunction.

A prior restraint on speech is an “administrative and judicial order[] 
forbidding
 certain communications when issued in advance of the time that such communications are to occur.”  
Alexander v. United States,
 509 U.S. 544, 550, 113 S. Ct. 2766, 2771 (1993).  Article one, section eight of the Texas Constitution provides that “[e]very person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege . . . .”  
Tex. Const.
 art. I § 8.  This portion of the Texas Constitution “provides greater rights of free expression than its federal equivalent.”  
Davenport v. Garcia, 
834 S.W.2d 4, 10 (Tex. 1992).  Thus, prior restraints on speech are presumptively unconstitutional.  
See id.
; 
San Antonio Express-News v. Roman
, 861 S.W.2d 265, 267 (Tex. App.—San Antonio 1993, orig. proceeding).

T
he Texas Constitution protects the right to speak, even to speak defamatory words, although damages are recoverable for such defamatory speech.  
Ex parte Tucker, 
220 S.W. 75, 76, 110 Tex. 335, 337-38 (1920).  In 
Tucker
, the supreme court explained this concept:

There can be no justification for the utterance of a slander.  It cannot be too strongly condemned.  The law makes it a crime.  But there is no power in courts to make one person speak only well of another.  The Constitution leaves him free to speak well or ill; and if he wrongs another by abusing this privilege, he is responsible in damages or punishable by the criminal law.

Id.
  “It is well settled that Texas courts will not grant injunctive relief in defamation or business disparagement actions if the language enjoined evokes no threat of danger to anyone, even though the injury suffered often cannot easily be reduced to specific damages.”  
Brammer v. KB Home Lone Star, L.P.,
 114 S.W.3d 101, 107 (Tex. App.—Austin 2003, no pet.).  Thus, even defamatory statements, with the exception of those that threaten others, are provided constitutional protection in most cases.  
See Hajek v. Bill Mowbray Motors, Inc.
, 647 S.W.2d 253, 255 (Tex. 1983) (dissolving temporary injunction as violative of article one, section eight of Texas Constitution); 
Brammer, 
114 S.W.3d at 106-09 (modifying temporary injunction to delete portions enjoining speech based on content); 
Markel v. World Flight, Inc.,
 938 S.W.2d 74, 79-81 (Tex. App.—San Antonio 1996, no writ) (holding temporary injunction unconstitutional prior restraint on free expression); 
Pirmantgen v. Feminelli
, 745 S.W.2d 576, 578-79 (Tex. App.—Corpus Christi 1988, no writ) (holding temporary injunction violated Texas Constitution); 
Strang v. Biggers
, 252 S.W. 826, 827 (Tex. Civ. App.—Dallas 1923, no writ) (affirming dissolution of temporary injunction that violated appellee’s freedom of speech); 
see also
 
Stansbury v. Beckstrom
, 491 S.W.2d 947, 947-50 (Tex. Civ. App.—Eastland 1973, no writ) (dissolving temporary injunction infringing on appellant’s freedom of speech).

Simply put, it is generally unconstitutional for courts to require one to acquire permission to speak before speaking:

It has never been the theory of free institutions that the citizen could say only what courts or legislatures might license him to say, or that his sentiments on any subject or concerning any person should be supervised before he could utter them.  Nothing could be more odious, more violative or destructive of freedom, than a system of only licensed speech or licensed printing.

Tucker
, 220 S.W. at 76.  Accordingly, an injunction enjoining future speech is permissible under article one, section eight of the Texas Constitution only if the trial court makes specific findings supported by the evidence that (1) an imminent and irreparable harm to the judicial process will deprive litigants of a just resolution of their dispute, and (2) the judicial action represents the least restrictive means to prevent that harm.  
See Davenport, 
834 S.W.2d at 10.
 We begin our analysis under the second prong set forth in 
Davenport
; that is, we examine the terms of the injunction to determine whether the “injunctive relief granted encompasses the least restrictive means of protecting against the alleged harmful effect.”  
See Ex parte Tucci
, 859 S.W.2d 1, 6 (Tex. 1993).  The temporary injunction enjoins Texas Mutual from “communicating or implying” that Surety Bank is “in some sort of financial trouble, has “committed a misfeasance or malfeasance,” or “was somehow unfit or unable to finance insurance premiums.”  Texas Mutual cannot “communicat[e] or imply[]” the above information to “any insurance agent or broker,” “any business known to be a customer or potential customer of Surety,” “an entity or individual who utilizes Surety’s financial services or such services of other financial companies,” any entity who “recommends such services to others,” or to any “employees and agents of [] the foregoing businesses or individuals.”  The temporary injunction’s restraint on prospective speech is, on its face, too broad; it in effect prohibits Texas Mutual from communicating with anyone concerning Surety Bank and restricts even truthful communications.  Provision two clearly is not 
the least restrictive means of protecting against the harm alleged by Surety Bank—tortious interference with prospective business relationships and business disparagement.  
See, e.g., id.

Surety Bank, citing 
Amalgamated Acme Affiliates, Inc., v. Minton 
and 
Karamchandani v. Ground Technology, Inc.
, argues that prior restraints on speech are permissible when the enjoined speech is commercial speech.  
Amalgamated Acme Affiliates, Inc., v. Minton,
 33 S.W.3d 387 (Tex. App.—Austin 2000, no pet.); 
Karamchandani v. Ground Technology, Inc.
, 678 S.W.2d 580 (Tex. App.—Houston [14th Dist.] 1984, no writ). This case, however, is distinguishable from both 
Amalgamated Acme 
and 
Karamchandani
. In 
Amalgamated Acme
, employees of University Sports called between forty and fifty of the plaintiff’s customers, provided false information to the customers, and urged them to withhold payments owed to the plaintiff.  As a result, several customers stopped paying the plaintiff.  
Amalgamated Acme
, 33 S.W.3d at 391. Employees of University Sports also called the plaintiff’s customers, falsely identified themselves as the plaintiff, and provided false information to the customers.  
Id.
  Because University Sports’s “speech” was “intended to end contractual relationships between [the plaintiff] and his customers, or to prevent contractual relationships with potential customers,” the appellate court agreed that it was commercial speech.  
Id.
 at 394.  Justice Bea Ann Smith explained that “[t]o enjoy any protection, commercial speech must not be false or misleading.”  
Id
.  Because University Sports’s speech was both false and misleading, the appellate court held that the trial court properly enjoined University Sports from making in the future the same communications the plaintiff proved it had made in the past. That is, the trial court enjoined University Sports from repeating to more known customers of the plaintiff and known potential customers of the plaintiff the very fraudulent and false information plaintiff proved University Sports had been disseminating to plaintiff’s customers.  
Id.

Here, unlike in 
Amalgamated Acme
, Surety Bank has not alleged or established that Texas Mutual made false statements.  Instead, Surety Bank argued in its motion seeking a temporary injunction that Texas Mutual’s letter “gave no reason for Defendant’s action [as of June 1, 2004 ceasing to accept premium financing agreements from Surety Bank].  Thus, the agents were given the impression that Defendant’s decision to refuse to issue insurance to those financing their purchase through Plaintiff was due to some misfeasance.”  The “impression” that a reader may draw from Texas Mutual’s letter is an issue that will be resolved at trial.  But we decline to hold here that a possible negative interpretation or impression of factually accurate words renders speech 
false or misleading.  Because the record before us does not establish that the speech at issue here was false or misleading, 
Amalgamated Acme
 is not on point.  Also because the record before us does not establish that the speech at issue here was false or misleading, its classification as commercial speech or noncommercial speech is not controlling. 

In 
Karamchandani
, appellant was a shareholder in appellee, a corporation.  678 S.W.2d at 581.  Appellant had filed suit seeking liquidation of appellee’s assets, and subsequently two of appellee’s customers received letters with copies of appellant’s suit for liquidation attached. 
 Id.
  Appellee sought a temporary injunction to prohibit appellant—who as a forty percent shareholder had access to information concerning appellee’s clients—from sending anymore letters to appellee’s clients.  
Id
.  The trial court granted a temporary injunction to preserve the status quo pending the outcome of the liquidation suit.  
Id.
 at 582.  The court of appeals upheld the injunction, noting,

[t]here was evidence which the trial court could have concluded indicated that the letters to appellee’s clients were written and sent by appellant.  They were sent to appellee’s major clients and stated that liquidation of appellee’s business assets was being sought.  The potential harm is obvious.  The injunction was narrow and precise and prohibited only the sending of letters which could have caused irreparable harm and would have disturbed the status quo.  

Id.

Here, pursuant to provisions of the temporary injunction that are unchallenged here, Texas Mutual has already faxed to all insurance agents who received its original letter a follow up letter stating that “Texas Mutual is accepting and will continue to accept applications for insurance using Surety Premium Financing as the source of funding.”  And the parties agree that Texas Mutual has been and continues to accept applications for insurance using Surety Bank pending the outcome of the underlying litigation.  Thus, the narrow temporary injunction in 
Karamchandani
, implemented to preserve the status quo, does not support the broad injunction entered in this case, especially when other provisions of the injunction have effectively ensured maintenance of the status quo.  

We hold that provision two in the trial court’s July 15, 2004 order on Texas Mutual’s motion to modify the temporary injunction is  unconstitutional under article one, section eight of the Texas Constitution as a prior restraint on speech.  
See Alexander
, 509 U.S. at 550, 113 S. Ct. at 2771; 
Tucker
, 220 S.W. at 76; 
Markel
, 938 S.W.2d at 79-81.  We sustain Texas Mutual’s sole issue on appeal.
(footnote: 4)
IV.  Conclusion

Having sustained Texas Mutual’s sole issue on appeal, we modify the trial court’s July 15, 2004 modified temporary injunction by deleting the following language,

(2) Communicating or implying to any insurance agent or broker or any business known to be a customer or potential customer of Surety, or an entity or individual who utilizes Surety’s financial services or such services of other financial companies or recommends such services to others (including all employees and agents of all of the foregoing businesses or individuals)
 
that Surety is in some sort of financial trouble or that Surety has committed a misfeasance or malfeasance or was somehow unfit or unable to finance insurance premiums.

We affirm the trial court’s striking of provision three in its June 25, 2004 temporary injunction, and as modified, we affirm the June 25, 2004 temporary injunction and the July15, 2004 order modifying it.

SUE WALKER

JUSTICE

PANEL A: HOLMAN, WALKER, and MCCOY, JJ.

DELIVERED: January 6, 2005

FOOTNOTES
1:
Texas Mutual’s letter provided:

Effective June 1, 2004, Texas Mutual Insurance Company will no longer accept premium finance agreements from Surety Bank, (doing business as Surety Premium Finance).  If we receive a premium finance agreement issued by Surety after this month, we will return the funds to Surety, and we will advise the agent to find funding from another source for the premium.

Thank you for your cooperation in this matter.  If you have any questions, please contact your 
Texas Mutual
ཥ marketing representative.

We appreciate the business you have given us, and we assure you that we will continue to earn your business.

2:
The trial court did not alter provision one of the temporary injunction providing that Texas Mutual may not “refus[e] to issue insurance or cancel[] insurance due to the purchasers’ financing the premiums in part or in whole through Surety,” and Texas Mutual does not challenge this provision here.

3:
At the hearing on Texas Mutual’s motion to modify the temporary injunction, Surety Bank conceded that the injunction enjoined prospective speech but argued that Texas Mutual could seek permission of the trial court prior to making such communications, “if . . . he [Texas Mutual] wants to communicate it, then he can come ask the Court.”  

4:
In light of our holding regarding the Texas Constitution, we need not consider whether provision two of the July 15, 2004 order violates the federal constitution.  
See
 
Tex. R. App. P.
 47.1.